# P. P. PERSONS v. THE CITY OF VALLEY CITY, a Municipal Corporation.

### (144 N. W. 675.)

**Cities — claim for damages against — verified and presented — when required — claim based on trespass.**

1. Following Gaustad v. Enderlin, 23 N. D. 526, §§ 2703 and 2704, Rev. Codes 1905, requiring verified claims for damages resulting from certain injuries to person or property to be presented to the city council as a prerequisite to the institution and maintenance of a suit against a city, are construed and held not to apply to a claim based upon a trespass to plaintiff's real property.

**City council — sidewalks — trespass on private property — damages.**

2. Where a city council, acting in its official capacity, authorizes the city's agents and officers to construct a sidewalk adjacent to plaintiff's property, and, through a mistaken belief that a portion of plaintiff's building extends into the street and is an unlawful obstruction thereon, authorizes such agents or officers to remove the same by going upon such private property and cutting off the portion of the building claimed to thus form an obstruction, and committing other acts of trespass thereon, the municipality is liable and must respond in damages for such wrongful trespass.

Opinion filed December 6, 1913.

Appeal from District Court, Barnes County, *J. A. Coffey,* J.

From an order sustaining a demurrer to the complaint, plaintiff appeals.

Reversed.

*Herman Winterer* and *David S. Ritchie,* for appellant.

If the building in question, or any part thereof, was an obstruction upon the street of the city, the council had the right to remove same. Rev. Codes 1905, § 2678, subd. 10; Ludlow v. Fargo, 3 N. D. 485, 57 N. W. 506.

Note. — As to the liability of a municipal corporation for trespass, see note in 34 Am. St. Rep. 27.

The question of the validity of requirement of notice of injury as a condition of municipal liability is treated in a note in 36 L.R.A.(N.S.) 1136. And on the question when notice is essential to the liability of municipal corporation, see note in 103 Am. St. Rep. 280.

If the act of the city council was in itself lawful, but the work of carrying it out was done in an unlawful and improper manner and resulted in damage to plaintiff's property, the city is liable. Chicago v. Norton Mill Co. 196 Ill. 580, 63 N. E. 1043; Boye v. Albert Lea, 74 Minn. 230, 76 N. W. 1131.

A city, in laying out, opening, and caring for its streets, is acting in its municipal capacity. Durkee v. Kenosha, 59 Wis. 123, 48 Am. Rep. 480, 17 N. W. 677.

In such sense, cities are answerable for wrongs and injuries done to private persons or property. Alberts v. Muskegon, 146 Mich. 210, 6 L.R.A.(N.S.) 1094, 117 Am. St. Rep. 633, 109 N. W. 262; Sheldon v. Kalamazoo, 24 Mich. 383.

A city is primarily liable for the acts of its agents, when such agents are doing acts directed to be done by the council, or city acting in its municipal capacity. Bunker v. Hudson, 122 Wis. 43, 99 N. W. 448.

The city is liable, notwithstanding the acts of which complaint is made, were done by its agents. Adams v. Milwaukee, 144 Wis. 371, 43 L.R.A.(N.S.) 1066, 129 N. W. 518; Potter v. Spokane, 63 Wash. 267, 115 Pac. 176; Hughes v. Fond du Lac, 73 Wis. 380, 41 N. W. 407; Johnson v. Somerville, 195 Mass. 370, 10 L.R.A.(N.S.) 715, 81 N. E. 268; Naumburg v. Milwaukee, 77 C. C. A. 67, 146 Fed. 641; Alberts v. Muskegon, 146 Mich. 210, 6 L.R.A.(N.S.) 1094, 117 Am. St. Rep. 633, 109 N. W. 262; East Rome v. Lloyd, 124 Ga. 852, 53 S. E. 103; Gerst v. St. Louis, 185 Mo. 191, 105 Am. St. Rep. 580, 84 S. W. 24; Hathaway v. Osborne, 25 R. I. 249, 55 Atl. 700; Hunt v. Boston, 183 Mass. 303, 67 N. E. 244; Chicago v. Selz, S. & Co. 202 Ill. 545, 67 N. E. 386, 14 Am. Neg. Rep. 23; Tegeler v. Kansas City, 95 Mo. App. 162, 68 S. W. 953; Chicago v. Spoor, 190 Ill. 540, 60 N. E. 540; Butman v. Newton, 179 Mass. 1, 88 Am. St. Rep. 346, 60 N. E. 401; Brown v. Webster City, 115 Iowa, 511, 88 N. W. 1070; Millard v. Webster City, 113 Iowa, 220, 84 N. W. 1044; O'Donnell v. White, 23 R. I. 318, 50 Atl. 333; Larrabee v. Cloverdale, 131 Cal. 96, 63 Pac. 143; Ludlow v. Mackintosh, 21 Ky. L. Rep. 924, 53 S. W. 524; Norman v. Ince, 8 Okla. 412, 58 Pac. 632, 6 Am. Neg. Rep. 681; Kane v. Indianapolis, 82 Fed. 770; Powell v. Wytheville, 95 Va. 73, 27 S. E. 805; Scott v. New York, 27 App. Div. 240, 50 N. Y. Supp. 191, 4 Am. Neg. Rep. 534; Donahoe v. Kansas City, 136 Mo.

657, 38 S. W. 571, 1 Am. Neg. Rep. 105; Oklahoma v. Hill Bros.
6 Okla. 114, 50 Pac. 242; Bunker v. Hudson, 122 Wis. 43, 99 N. W.
448; D'Amico v. Boston, 176 Mass. 599, 58 N. E. 158; Larson v.
Grand Forks, 3 Dak. 307, 19 N. W. 414.

Sections 2703 and 2704 of the Revised Codes of North Dakota do
not include, nor have they reference to, matters of injury to adjacent
property caused by trespass.   Notice of claim for damages against a
city is not necessary unless made so by statute.   28 Cyc. 1447–1450,
and cases cited; Giuricevic v. Tacoma, 57 Wash. 329, 28 L.R.A.(N.S.)
533, 106 Pac. 908; Tattan v. Detroit, 128 Mich. 650, 87 N. W. 894;
MacDonald v. New York, 42 App. Div. 263, 59 N. Y. Supp. 16.

The *subject-matter* of a statute limits its usage and application.
Warren v. Davie, 43 Ohio St. 447, 3 N. E. 301; Sommers v. Marsh-
field, 90 Wis. 59, 62 N. W. 937; Bradley v. Eau Claire, 56 Wis. 168,
14 N. W. 10; Jung v. Stevens Point, 74 Wis. 547, 43 N. W. 513;
Dawes v. Great Falls, 31 Mont. 9, 77 Pac. 309; Gallamore v. Olympia,
34 Wash. 379, 75 Pac. 978; Giuricevic v. Tacoma, 57 Wash. 329, 28
L.R.A.(N.S.) 533, 106 Pac. 908; Hughes v. Fond du Lac, 73 Wis.
380, 41 N. W. 407; Moran v. St. Paul, 54 Minn. 279, 56 N. W. 501;
Pye v. Mankato, 38 Minn. 536, 38 N. W. 621; Dovey v. Plattsmouth,
52 Neb. 642, 73 N. W. 11; Fugere v. Cook, 27 R. I. 134, 60 Atl.
1067; Megins v. Duluth, 97 Minn. 23, 106 N. W. 89; McIntee v.
Middletown, 80 App. Div. 434, 81 N. Y. Supp. 124; Kelly v. Fari-
bault, 95 Minn. 293, 104 N. W. 231; Postel v. Seattle, 41 Wash. 432,
83 Pac. 1025.

*Lee Combs, L. S. B. Ritchie,* and *M. J. Englert,* for respondent.

It is a prerequisite to the right to begin an action against a city to re-
cover damages for injury to property, that the notice of the claim must
be filed with the city auditor, and such fact must be pleaded and proved.
O'Donnell v. New London, 113 Wis. 292, 89 N. W. 511.

Our statute relates to and covers *all claims* for damages against a
city, and requires notice thereof, before suit.   Foxworthy v. Hastings,
25 Neb. 133, 41 N. W. 132; Rev. Codes 1905, §§ 2703, 2704; 28
Cyc. 1470.

Failure to comply with the mandate of the statute as to notice is fatal
to plaintiff's cause of action.   3 Abbott, Mun. Corp. pp. 2369 et seq.;
28 Cyc. 1472, and cases cited; Sharp v. Mauston, 92 Wis. 629, 66

N. W. 803; Flieth v. Wausau, 93 Wis. 446, 67 N. W. 731; Daniels v. Racine, 98 Wis. 649, 74 N. W. 553; Ziegler v. West Bend, 102 Wis. 17, 78 N. W. 164; Starling v. Bedford, 94 Iowa, 194, 62 N. W. 674; O'Donnell v. New London, 113 Wis. 292, 89 N. W. 511; McCue v. Waupun, 96 Wis. 625, 71 N. W. 1054; Van Frachen v. Ft. Howard, 88 Wis. 570, 60 N. W. 1062; Pollard v. Cadillac, 133 Mich. 503, 95 N. W. 536; Trost v. Casselton, 8 N. D. 534, 79 N. W. 1071; Coleman v. Fargo, 8 N. D. 69, 76 N. W. 1051; Barrett v. Mobile, 129 Ala. 179, 87 Am. St. Rep. 54, 30 So. 36; Bancroft v. San Diego, 120 Cal. 432, 52 Pac. 712; Adams v. Modesto, 6 Cal. Unrep. 486, 61 Pac. 957.

FISK, J.   This is an appeal from an order of the district court of Barnes county, sustaining a demurrer to the plaintiff's complaint.   The plaintiff seeks to recover damages from the defendant city for the alleged trespass by it, through its authorized agents and servants, upon his property, and committing injuries thereto.

It will not be necessary to set out the complaint in full, and we merely state the substance thereof, except as to the important paragraphs which we copy in full.

Plaintiff first alleges his ownership and possession of lots 6 to 12 inclusive of block 16 of the original plat of the city of Valley City; also the fact that defendant is and was a municipal corporation duly organized and existing under and by virtue of the laws of this state. It is next alleged that at all times herein mentioned there was situated upon lots 10, 11, and 12 aforesaid, a grain elevator owned and used by the plaintiff and his tenants for the purpose of buying and storing grain.   Then follow paragraphs 4 to 6, inclusive, which we quote in full as follows:

## IV.

"That on the 11th day of May, A. D. 1908, at a meeting of the city council of the said defendant city, held at its council rooms in said city, the said city council of said city of Valley City, for and on behalf of said defendant, did authorize its agents and officers to construct a sidewalk along the south line of the above-described premises, and thereafter and on the 2d day of August, A. D. 1909, the said coun-

cil did authorize its agents and officers to remove a part of the premises of said plaintiff herein, claiming and setting forth that the same was an obstruction, and was constructed upon the street of said defendant."

## V.

"That on or about the 15th day of October, A. D. 1909, defendant, through its duly appointed agent, unlawfully and wrongfully entered upon the premises of the said plaintiff, and did then and there destroy the property of the said plaintiff, to wit, the said grain elevator, in this that the defendant then and there caused to have torn down, cut off, detached, and removed from the said building a part thereof, and did cut off, remove, detach, and take away from the said building a part thereof; that said action on the part of the said defendant was without due authority of law, and to this plaintiff's damage in this that it destroyed the said building situated upon the said premises for all uses and purposes, and destroyed the same as a structure to his damage in the sum of $1,000."

## VI.

"Plaintiff further alleges that said defendant entered upon his said premises, and committed the said damage to his said building solely upon the premises of this plaintiff, and that the building of the said plaintiff was built, constructed, erected, and maintained solely upon the premises of the plaintiff, but that, notwithstanding this, the defendant wrongfully and unlawfully entered upon his said premises and committed the damage hereinbefore set forth."

Paragraphs 7, 8, and 9 relate to special damages alleged to have been suffered on account of such alleged unlawful acts, and need not be set out herein.

Paragraph 10 is as follows:

"Plaintiff further alleges that all of said acts have been committed by the defendant, through its authorized agents and officials, by reason of the express authority given to the said agents and officials by the city council of the said city, and that the said agents and officials

did act in full conformity to, and not in excess of, the said instructions given; and alleges that by reason of the said acts so authorized, that this plaintiff has been damaged as hereinbefore set forth; and in this behalf the plaintiff further alleges that all of the acts and steps were so taken by the said city without notice to said plaintiff."

In his prayer for judgment, plaintiff demands the sum of $5,790 and costs.

The ground of the demurrer is that it fails to state facts sufficient to constitute a cause of action in the following particulars:

"(a) Because it appears upon the face of said complaint that the acts complained of were and are *ultra vires,* and beyond and without the authority and power of said defendant city, a municipal corporation, to do or commit:

"(b) Because it appears upon the face of said complaint that the acts complained of, if they were within the corporate power and might have been lawfully accomplished by the said city, through its municipal authorities, were nevertheless committed by the alleged agents of said city without proceedings according to law, and that no ratification of such unauthorized acts was had or made by said city, and because it appears from the face of said complaint that the acts and omissions complained of were done and suffered by said alleged agents and servants without the scope of their employment, and not on behalf of said city.

"(c) Because said complaint failed to show or allege that the claim or claims set forth in plaintiff's complaint, for injury and damages alleged to have arisen by reason of the acts and omissions set forth in said complaint on the part of the city authorities and servants, and in respect to its said streets referred to in said complaint, were filed in the office of the city auditor, and signed by the plaintiff as claimant, or by someone on his behalf, duly verified by him, within thirty days from the happening of such injury or damage; or that said claim or claims, upon which said plaintiff's action is brought as shown by his complaint, were in no manner or at any time filed in the office of the city auditor of said city, or considered or acted upon by said city's mayor or council as provided and required by §§ 2703 and 2704 of the Revised Codes of the state of North Dakota for the year 1909.

"(d) Because there is another action pending between the same parties for the same cause."

We are clear that none of the grounds of the demurrer are tenable, and that the order sustaining such demurrer was therefore erroneous.

Respondent's counsel rely chiefly upon the ground stated under subdivision "c" of the demurrer. They state in their brief that they do not waive the other grounds, but their entire printed brief and argument is directed to the ground stated in subdivision "c," and, in view of this, we will first dispose of this ground.

The action being one to recover damages for injuries to plaintiff's real property, is it necessary, in order to state a cause of action, that the complaint should allege the presentation by him to the city council, prior to the commencement of his action, of a verified claim for such damages pursuant to §§ 2703 and 2704 of the Revised Codes of 1905? Respondent's counsel earnestly contend for an affirmative answer to the above question. These sections are as follows:

"Sec. 2703. All claims against cities for damages or injuries alleged to have arisen from the defective, unsafe, dangerous, or obstructed condition of any street, crosswalk, sidewalk, culvert, or bridge of any city, or from the negligence of the city authorities in respect to any such street, crosswalk, sidewalk, culvert, or bridge, shall, within thirty days from the happening of such injury, be filed in the office of the city auditor, signed and properly verified by the claimant, describing the time, place, cause, and extent of the damages or injury, and the amount of damages claimed therefor; and upon the trial of an action for the recovery of damages by reason of such injury, the claimant shall not be permitted to prove any different time, place, cause, or manner or extent of the injury complained of, or any greater amount of damages. In case it appears by the affidavit of a reputable physician, which shall be prima facie evidence of the fact, that the person injured was, by the injury complained of, rendered mentally incapable of making such statement during the time herein provided, such statement may be made within thirty days after such complainant becomes competent to make the same, but such affidavit may be controverted on the trial of an action for such damages, and in case of the death of the person injured prior to his becoming competent to make such statement, the same may be made within thirty days after his death, by any person having knowl-

edge of the facts; and the person making such statement shall set forth therein specifically the facts relating to such injury as aforesaid, of which he has personal knowledge, and shall positively verify such statement, and shall verify the facts therein stated of which he has no personal knowledge, to the best of his knowledge, information, and belief.

"Sec. 2704. No action shall be maintained against any city as aforesaid for injury to person or property, unless it appears that the claim for which the action was brought was filed in the office of the city auditor as aforesaid, with an abstract of the facts out of which the cause of action arose, duly verified by the claimant, and that the city council did not, within sixty days thereafter, audit and allow the same; and such abstract of facts must be signed and verified as provided in the preceding section, and all provisions of such section with reference to such verification shall be applicable to such abstract of facts, and no action shall be maintained unless the plaintiff therein shall plead and prove the filing of such claim and abstract as hereinbefore provided."

In commenting upon these sections, respondent's counsel say: "To our minds this language is clear and unmistakable. No one can doubt that when the legislature adopted the words, 'for injury to person or property,' it meant just what it said, and that such language includes property injured, or alleged to have been injured, which abuts a city street, when the injury was the result of an act or omission, with respect to such street, which, as we have seen, is exactly the claim of the plaintiff in the case at bar."

Counsel then devote considerable space in an attempt to differentiate certain authorities cited and relied upon by appellant's counsel, upon the ground that they were decided under statutes differing radically from those of this state above quoted.

We find it unnecessary to examine these authorities, for the question is set at rest in this state by the recent decision of this court in the case of Gaustad v. Enderlin, 23 N. D. 526, 137 N. W. 613. While respondent's counsel challenge the correctness of such decision and urge a reversal of the construction there placed upon said statutes, we are entirely satisfied with the correctness of the holding there made, as well as with the reasoning contained in the opinion.

The language employed in §§ 2703 and 2704 is so clear in limiting the operation thereof to claims for damages or injuries founded upon

alleged defective, unsafe, dangerous, or obstructed condition of a street, sidewalk, crosswalk, culvert, or bridge, or from the negligence of the city authorities in respect thereto, as to leave no room for doubt as to the legislative intent, such intention clearly being to require only those claims to be presented which are based upon injuries to person or property arising from the actual or implied negligence of the city in constructing or maintaining its streets, sidewalks, crosswalks, culverts, or bridges. The damages sought to be recovered in the case at bar are clearly not founded upon claims thus arising; and the authorities cited and relied upon by respondent's counsel may, we think, be easily differentiated from the case at bar on account of a difference in the statutes. It would serve no useful purpose, however, to review these cases in this opinion, and we shall not take the time nor the space necessary to do so.

The other grounds of the demurrer will now be considered. As we understand the contention of respondent's counsel made in oral argument before this court, they assert that the defendant, being a municipal corporation, cannot be held liable to respond in damages for the alleged wrongful acts charged against it, for the reason that such acts, if authorized by it, were and are *ultra vires,* and that plaintiff's sole redress for such acts is a proceeding against the individuals who were instrumental in behalf of the city in doing, or causing to be done, the acts aforesaid. In others words, that the city, under the law, could not and did not in any way authorize or ratify the said acts of its officers and servants.

Does the doctrine of *respondeat superior* apply to a municipal corporation under the facts alleged in the complaint? We are compelled to answer in the affirmative, for reasons hereinafter stated.

There can be no doubt regarding the full authority and control of a municipality over its streets, and its power to remove any obstructions or encroachments thereon, for it is expressly so provided by statute. See § 2678, Rev. Codes 1905, subd. 7 to 10 inclusive. The defendant city, through its officers, no doubt in good faith but mistakably, belived that a portion of plaintiff's elevator extended over the property line, into the street, thereby constituting an unlawful encroachment thereon, and the acts complained of were no doubt done for the purpose of removing what was deemed such an unlawful encroachment upon the

street. In thus attempting to exercise a lawful power expressly con-
ferred by statute, can the city escape liability when it happens that its
officers in fact were mistaken as to the existence of the encroachment?
We think not. The acts complained of were expressly authorized by
the city council, and to hold the city exempt from all liability under
the facts pleaded in the complaint would, we think, be manifestly un-
just. Such a rule might, in many cases, work a rank injustice to per-
sons whose property rights have been flagrantly invaded. The doctrine
contended for by respondent's counsel is, under the facts pleaded, clearly
untenable, on principle, and, as we shall show, is opposed to the ad-
judicated cases. The leading case on this subject is Thayer v. Boston,
19 Pick. 511, 31 Am. Dec. 157. The facts there were that the officers
of the defendant city had obstructed plaintiff's access to the street by
the erection therein of stalls along the front of his premises. He
brought his action on the case against the city, and in behalf of the
defendant it was argued that if the officers of the corporation, within
their respective spheres, act lawfully and within the scope of their
authority, their acts are justifiable, and nobody is liable for damages,
and if an individual sustains loss by the exercise of such lawful author-
ity it is *damnum absque injuria*. But if they do not act within the
scope of their authority, they act in a manner which the corporation
has not authorized, and in such case the officers are personally liable
for such unauthorized acts. In replying to such argument Chief Jus-
tice Shaw said: "But the court are of opinion that this argument, if
pressed to all its consequences and made the foundation of an inflex-
ible practical rule, would often lead to very unjust results. There is
a large class of cases in which the rights of both the public and of
individuals may be deeply involved, in which it cannot be known at the
time the act is done whether it is lawful or not. The event of a legal
inquiry in a court of justice may show that it was unlawful. Still,
if it was not known and understood to be unlawful at the time, if it
was an act done by the officers having competent authority, either by
express vote of the city government, or by the nature of the duties and
functions with which they are charged by their offices, to act upon
the general subject-matter, and especially if the act was done with
an honest view to obtain for the public some lawful benefit or advan-
tage, reason and justice obviously require that the city, in its corporate

capacity, should be liable to make good the damage sustained by an individual in consequence of the acts thus done. It would be equally injurious to the individual sustaining damage, and to the agents and persons employed by the city government, to leave the party injured no means of redress except against agents employed, and by what at the time appeared to be competent authority, to do the acts complained of, but which are proved to be unauthorized by law. And it may be added that it would be injurious to the city itself in its corporate capacity, by paralyzing the energies of those charged with the duty of taking care of its most important rights, inasmuch as all agents, officers, and subordinate persons might well refuse to act under the direction of its government in all cases, where the act should be merely complained of, and resisted by any individual as unlawful, on whatever weak pretense; and conformably to the principle relied on, no obligation of indemnity could avail them. The court are therefore of opinion that the city of Boston may be liable in an action of the case, where acts are done by its authority which would warrant a like action against an individual, provided such act is done by the authority and order of the city government, or of those branches of the city government, invested with jurisdiction to act for the corporation, upon the subject to which the particular act relates, or where, after the act has been done, it has been ratified, by the corporation, by any similar act of its officers."

Another leading case holding to the same effect is Lee v. Sandy Hill, 40 N. Y. 442. There the municipality was sued for trespass to land in unlawfully, wrongfully, and forcibly entering upon plaintiff's premises and removing fences and digging up soil, etc., preparatory to the making of a highway over plaintiff's premises. It will thus be seen that the case is directly in point in the case at bar. The court, among other things, there said: "The doctrine is too well settled in this court to admit of discussion, that municipal corporations, like the defendant, are liable in trespass for the illegal acts of its officers." Citing numerous authorities, and among them the case of Thayer v. Boston, supra. The distinction is there clearly drawn between acts performed in a governmental capacity, for which the municipality is not liable, and acts performed for the municipality as such.

Another case directly in point is that of Weed v. Greenwich, 45

Conn. 170. In the opinion which was written by Pardee, J., we find the following language: "The court of warden and burgesses constitutes the borough legislature; to this court the accepted charter granted power to take action for the corporation upon the general subject of encroachments, to which the particular act complained of relates; they exercised all the powers of the borough in this behalf, and in respect to all external relations must be considered as identical with the corporation; although the grant is in form to the warden and burgesses, it is in reality to the borough, to be exercised for its benefit; acting at their pleasure, presumably they acted only when the special interests of the borough were to be promoted; they were not elected by the corporation in obedience to any statute, for the purpose of performing a governmental duty. Thus representing and acting for the borough they ordered the removal of the fence, and the borough should redress the wrong occasioned by the performance of an act in its particular interest, for municipal immunity does not reach beyond governmental duty. It is contrary to all principles of natural justice that the residents within certain territorial limits should seek for and obtain corporate powers for the more ready accomplishment of undertakings specially advantageous to themselves, but not at all necessary for the public, and in such powers find relief for responsibility for wrongs upon private rights.

"In the case before us, the warden and burgesses believed that the fence stood upon the highway, and that they had the right to remove it; apparently the warden came to the execution of their mandate clothed with official authority and power, not intending any injury. In all like cases it is best for those concerned that the individual should respect that authority and submit to the exercise of it, having knowledge that if he can prove that he has suffered any wrong he can look to a responsible corporation, rather than to an irresponsible individual, for damages." Numerous authorities are therein cited and quoted from with approval, including Hildreth v. Lowell, 11 Gray, 349; Hawks v. Charlemont, 107 Mass. 414; Buffalo & H. Turnp. Co. v. Buffalo, 58 N. Y. 639; Sheldon v. Kalamazoo, 24 Mich. 383; Crossett v. Janesville, 28 Wis. 421; Soulard v. St. Louis, 36 Mo. 546; Allen v. Decatur, 23 Ill. 332, 76 Am. Dec. 692; Woodcock v. Calais, 66 Me. 234; Inman v. Tripp, 11 R. I. 520, 23 Am. Rep. 520; Ashley v. Port Huron, 35

26 N. D.—23.

Mich. 296, 24 Am. Rep. 552; Chicago v. McGraw, 75 Ill. 566. All of these cases appear to be directly in point, announcing a rule contrary to that contended for by respondent's counsel in the case at bar. To quote from each of these authorities would extend this opinion to an unwarranted length, and we shall content ourselves by brief quotations from a few of them.

In Sheldon v. Kalamazoo, the marshal removed a fence which it was claimed encroached upon the highway. The lower court refused to hear evidence offered by plaintiff to show that the fence was not an encroachment, giving as his reason that the president and trustees acted in the capacity of public officers, and not municipal agents, and that the corporation was therefore not liable for their acts; but the supreme court of Michigan in granting a new trial said: "The doctrine is entirely untenable that there can be no municipal liability for unlawful acts done by municipal authorities to the prejudice of private parties. In this respect, public corporations are as distinctly legal persons as private corporations. There are officers who are corporation agents, and there are municipal officers whose duties are independent of agency and with distinct liabilities. But when the act done is in law a corporate act, there is no ground, upon reason or authority, for holding that if there is any legal liability at all arising out of it, the corporation may not be answerable. There is no conflict whatever in the authorities on this head. . . . There is no authority that we can find which holds such an invasion of private lands not to be an act of the corporation, and none which would exempt the corporation from liability to an action for the wrong."

In Allen v. Decatur, the supreme court of Illinois many years ago said: "We shall, in this opinion, devote our attention to the principal question which has been argued in the case, which is, whether a municipal corporation can be sued in an action of trespass, for acts done in obedience to an order of the corporation. The law is now so well settled that it is nowhere controverted that such corporations may be sued, in case, for tortious acts done under the instructions of such corporations."

In Woodcock v. Calais, the city government passed an order "that the street commissioner be directed to cause all fences now on the public streets to be removed." Pursuant thereto such commissioner employed

a surveyor to run a line between the plaintiff's land and the street. The line, as run, proved to be outside of the street limits and upon the plaintiff's land. Believing the line to be correctly run, the commissioner moved the plaintiff's fence to conform to such new line, and removed from plaintiff's land earth and rocks, and built a sidewalk thereon. In holding that the principles of *respondeat superior* applied, and that the city was liable to the plaintiff for trespass in damages, the supreme court of Michigan held that the fact that the street commissioner "was expressly 'directed' by the city government to cause all fences on the street to be removed, and that while attempting to follow these directions he committed the trespass which is the foundation of this action, withdraws this case from the application of the principle applicable to cases of public officers. For, while he was a public officer, and had lawful authority to act in the premises without any directions from the city, still the city was responsible for the safe condition of the streets, and chose by positive, formal vote to direct the commissioner. Whether he was obliged to follow the direction or not, is immaterial. He did act; and in his action he became *quoad hoc* the city's agent; and we are of the opinion that the superior must respond."

In Ashley v. Port Huron, Cooley, Ch. J., in speaking for the court, said: "It is very manifest from this reference to authorities, that they recognize in municipal corporations no exemption from responsibility where the injury an individual has received is a direct injury accomplished by a corporate act which is in the nature of a trespass upon him. The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If the corporation send people with picks and spades to cut a street through it without first acquiring the right of way, it is liable for a tort."

The Minnesota court, in speaking through Mitchell, J., in Boye v. Albert Lea, 74 Minn. 230, 76 N. W. 1131, held the city liable for causing a dam to be constructed in an unnavigable stream, resulting in forcing water to overflow plaintiff's land. In reversing the trial court's order sustaining a demurrer to the complaint, Judge Mitchell said: "The contention of its counsel is that the tort alleged is not one which the city as a municipality could commit under any circumstances; in other words, that it was wholly *ultra vires*, and hence

that the city was not liable. Municipal corporations, in the execution of their corporate powers, fall within the rule of *respondeat superior* when the requisite elements of liability coexist. To create such liability it is fundamentally necessary that the act done which is injurious to others must be within the scope of the corporate powers as prescribed by the charter; in other words, it must not be *ultra vires* in the sense that it is not within the power or authority of the corporation to act in reference to it under any circumstances. If the act complained of lies wholly outside of the general or special powers of the corporation as conferred by its charter, the corporation can, in no event, be liable for the acts of its officers, for a corporation cannot be impliedly liable to a greater extent than it could make itself liable by express corporate vote or action. But if the wrongful act be not, in this sense, *ultra vires,* but is within the general scope of the powers of the municipality, and was so done in the execution of corporate powers of a ministerial nature, but in an improper and unlawful manner, as to injure others, it may be the foundation of an action in tort against the corporation. 2 Dill. Mun. Corp. § 968. In this case it not only does not appear that the act complained of was *ultra vires,* in the sense above stated, but, on the contrary, it affirmatively appears from the complaint, read in connection with the city charter, that the act was done by the city in the execution of its corporate powers, to wit, the regulation and control of the flowage of the waters of Fountain Lake, but in such a negligent or unlawful way as to injure the plaintiff by overflowing his land. We use the term 'corporate powers' to distinguish them from those public services, not peculiarly local or corporate, imposed by statute on municipal officers, but in which the corporation, as such, has no interest except as a part of the general public. Our conclusion is that the complaint states a cause of action."

To cite further authorities seems wholly unnecessary, but we call attention to the interesting opinions in Naumburg v. Milwaukee, 77 C. C. A. 67, 146 Fed. 641, and to the numerous authorities therein cited. Also the recent case of Bunker v. Hudson, 122 Wis. 43, 99 N. W. 448. In the latter case we quote from the opinion as follows: "In grading the street the city was doing one of the things which, as a municipal corporation, it was authorized to do. That work was done in an improper or negligent manner, so as to invade the rights of the plaintiffs,

not as members of the public, but as adjoining proprietors. Toward them the city's act was not governmental, but proprietary. For proximate damage thus caused, liability results according to principle, and without conflict of authority." Citing numerous cases.

In concluding this opinion we cannot refrain from quoting from Judge Dillon's valuable works on Municipal Corporations, 5th ed. vol. 4, § 1651: "Cases such as those just mentioned are to be distinguished from others which resemble them in the circumstance of relating to wrongful acts, but which arise out of matters or transactions within the general powers of the corporation, and in respect of which there may be a corporate liability. Thus, if in exercising its power to open or improve streets, or to make drains and sewers, the agents or officers of a municipal corporation, under its authority or direction, commit a trespass upon, or take possession of, private property, without complying with the charter or statute, the corporation is liable in damages therefor. In such cases, also, an action will lie against a city corporation by the owner of land through which its agents have unlawfully made a sewer, or for trees destroyed and injuries done by them. A case in Louisiana, which was several times before the courts in that state, was decided upon the same principle. The mayor of a city tortiously, and in defiance of an injunction, proceeded at the head of a force of laborers and demolished a portion of the plaintiff's house, for the supposed reason that it was on public ground. The city corporation ratified the act by defending it. On the first appeal the court doubted whether the corporation could be made liable for the wrongful acts charged against its officers, especially as these were alleged to have been done by them wilfully and maliciously. On the second appeal it was held that, although the acts of the mayor were done without the previous order of the city council, yet the corporation, by reason of its subsequent ratification, was liable, and the plaintiff recovered."

It follows from what we have above said that the order appealed from was erroneous, and the same is accordingly reversed.

BURKE, J., being disqualified, did not participate.