JOHN P. CHASE

*vs.*

WM. A. COCHRAN, JAMES R. BRAGG, THOMAS CUNNINGHAM

and GEORGE HUFF.

Lincoln.    Opinion April 1, 1907.

*Ways.    Location.    Trespass.    Estoppel.    " Official Acts."    Authorizing a Tort.
Liability.    Speculative Damages.    R. S., chapter 6, section 91 ;
chapter 23, section 75.*

No public way can be located across flats without authority therefor being first obtained from the legislature.

The owner of flats has in them an estate in fee, subject only to the public rights of fishing, fowling and passing over them in boats, and may maintain trespass quare clausum for any injury done to his possession of the same.

Petitioners for the laying out of a way are not thereby estopped to deny the legality of its subsequent location.

A grantee is not estopped by any act or declaration, of which he has no notice, of a grantor in possession at the time of the conveyance.

Statements not acted upon afford no ground for estoppel.

All acts of officials are not official acts, but only such as are done under some authority derived from the law, or in pursuance of prescribed duties.

One who directs or authorizes a trespass is equally and jointly liable with him who commits it.

Damages which are purely theoretic and speculative are too indefinite and uncertain to be recovered.

On report.    Judgment for plaintiff.

Trespass quare clausum brought to recover damages alleged to have been sustained by the plaintiff by reason of the building of a bridge across a tide water and navigable cove in the town of Edgecomb, Lincoln County, which cove is dry at low water.  This bridge was constructed by the defendant, George Huff, under a contract

made by the selectmen of said Edgecomb in their official capacity and on behalf of said town under one of certain votes of said town passed previous to the making of said contract and the construction of said bridge. This bridge made a part of the town road previously located by the selectmen of said town and accepted by said town which location covered the flats across which said bridge was built. The three selectmen representing said town in the making of said contract with said Huff for the construction of said bridge are the other three defendants.

Tried at the October term, 1905, of the Supreme Judicial Court, Lincoln County.     Plea, the general issue with the following brief statement:

"That whatever was done on the premises of the plaintiff was done under and by virtue of the public right to build and construct a road which had been there legally laid out by the proper officials of the town of Edgecomb and authorized by lawful authority, and any entry upon the land of the plaintiff was under such right and laying out.

"That the said Wm. A. Cochran, James R. Bragg and Thomas Cunningham were at the time alleged in said writ public officers of the town of Edgecomb, and are not responsible to this plaintiff for their acts as such, or for their acts in laying out said road; nor for the acts of those they were obliged to employ in building the same; nor for the contractor with said town who did the work and acts which were done on the plaintiff's premises; that whatever they did thereon or in relation thereto, they did as such public officers and as agents of said town, and are not themselves personally responsible therefor.

"That this plaintiff, by his acts and words, and by the acts and words of his grantors, Norris & Gay, is estopped from making any complaint on account of the matters complained of in his said writ.

"And the defendants further say that they are not responsible or liable for the maintenance of any matter or thing which the plaintiff complains in his said writ infringes his rights."

At the conclusion of the evidence, the case was reported to the Law Court for decision upon so much of the evidence as is legally admissible, with the stipulation that "if the action is maintainable

against any of the defendants, judgment is to be given against such defendant or defendants and the court is to assess damages, otherwise judgment for the defendants."

The case fully appears in the opinion.

*Wm. H. Hilton,* for plaintiff.

*Arthur S. Littlefield,* for defendants.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

POWERS, J. Trespass quare clausum, on report. Writ dated January 2, 1905. Aside from the testimony, which related principally to the questions of estoppel and damages, the facts appear in the following agreed statement:

"This is an action to recover damages on account of the building of a bridge across a tide water and navigable cove in the town of Edgecomb which cove is dry at low water, and the flats of which, with the adjoining upland on the east side of the cove, and what the plaintiff claims is a mill site and a dam some fifty feet south of the bridge, are owned by and was conveyed to the plaintiff May 16, 1903. This bridge was constructed by the defendant, George Huff, under a contract dated June, 1904, made by the selectmen of the town in their official capacity and on behalf of the town under one of the following votes at a town meeting held May 5, 1903, which was that the selectmen receive bids for building the whole or sections of the road, and allowed to accept or reject any or all bids; and at a meeting of said town held March, 1904, under an article in the warrant reading 'to see what kind of a bridge the town will vote to build across the cove near John P. Chase's ice pond,' it was voted 'to build a bridge. Voted to leave the matter of bridge with the selectmen, and commissioners.' The selectmen, representing the town in the making of this contract, are the other three defendants. The bridge was built in July, 1904. This bridge made a part of the town road located by the selectmen of Edgecomb May 4, 1903, and accepted by the town May 13, 1903, which location covered the flats across which the bridge was built, and the sufficiency or regularity of the location is

only questioned in so far as it is across the tide and navigable waters of said cove."

The location and plans for the bridge were approved by the Secretary of War Feby. 17, 1904. Defendants in their plea justified what was done on the premises of the plaintiff "by virtue of the public right to build and construct a road, which had been there legally laid out by the town of Edgecomb and authorized by lawful authority, and any entry upon the land of the plaintiff was under such right and laying out."

A part of the bridge was built over flats owned by the plaintiff. There was no special act of the legislature authorizing its erection, and no consent of the legislature is shown to the laying out of the way across tide water at the spot where the bridge was built. The plaintiff's flats at low water are entirely dry, and the defendants claim that the way was legally located although the bridge is a public nuisance, that the municipal officers had a perfect right to locate the road across such flats and to construct so much of it as did not interfere with or obstruct the navigation of the creek when the flats were covered with the tide. We cannot however conceive of a town way laid out by the municipal officers which the public can only use or have a right to use at certain times in the day, which times themselves vary each day with the ebb and flow of the tide. Nor can we conceive of the necessity for holding that the municipal officers have power under the statute to locate and contruct such anomalous and indeterminate ways, when by obtaining the legislative consent and in case a bridge, dam, dike or causeway is desired, the approval of the location and plans by the Chief of Engineers and the Secretary of War of the national government, a public way may be built in which the rights of the public are known and clearly defined. The question cannot be regarded as an open one. In *Kean* v. *Stetson*, 5 Pick. 492, the selectmen of Mansfield attempted to lay out a town way along flats between high and low water mark, that is upon flats which at low water were not covered by the tide, precisely what the defendants claim was done in the case at bar, except that here the attempted location extends clear across the cove from high water mark to high water mark. The court

speaking through Chief Justice Parker said, "We do not believe there is any authority given by the statute to appropriate the shores or flats of a navigable river to the use of the inhabitants of a town in the form of a way or road. It cannot be wanted for any of the common purposes of a road, and cannot be constructed so as to be used as such without interrupting more or less the public right of passage up and down the river. The whole river included within high water mark on each side is a public highway. . . . .

A public highway cannot be laid out across a navigable stream, except by a license from the legislature. Why? Because it will destroy an existing highway, the river itself, in which all the citizens have an interest. A town, then, cannot lay a way on the shore between high and low water mark, for though it may not entirely, it will essentially impair the public right."

It was held in *Cape Elizabeth* v. *Co. Coms.*, 64 Maine, 456 that a way across tide waters can only be located by authority of the legislature. In a more recent case speaking of a similar attempted location, this court said: "It was exclusively within the province of the legislature to determine whether public convenience and necessity required the extension of Exchange Street to low water mark." *Bangor* v. *Railroad Co.*, 97 Maine, 151. The location of the way being illegal and void the plaintiff had the same title to his flats as if it had never been attempted. He had in them an estate in fee, subject only to the public rights of fishing, fowling and passing over them in boats, and might maintain trespass quare clausum for any injury done to his lawful possession of said flats. *Moore* v. *Griffin*, 22 Maine, 350, *Com.* v. *Alger*, 7 Cush, 53; *King* v. *Young*, 76 Maine, 76.

It is claimed that the plaintiff is estopped to deny the legality of the way. He and his predecessor in title who then owned the premises joined in the petition for its location. The petition contained no representation of fact which is relied upon to create the estoppel. At most it could only be regarded as a representation on his part that the municipal officers had authority to make the location. This was a question of law about which the municipal officers are presumed at least to know as much as the petitioners, There is no

evidence that they were misled by it. The petitioners presumably were asking for a legal location, and they had a right to rely that before basing any action upon the petition the consent of the legislature would be obtained. The petitioners are not estopped to deny the legality of the subsequent location. In re *Sharp*, 56 N. Y. 357.

The plaintiff's grantors before conveying to him, wrote to the selectmen " to lay out the road now contemplated just as you think advisable." Without discussing or deciding the adequacy of this statement to create an estoppel against the grantors, it is sufficient that there is no evidence that the plaintiff ever heard of this statement before purchasing. The plaintiff cannot be estopped by any act, conduct or declaration of his grantors of which he had no notice. His grantors were in possession at the time of the conveyance to him ; neither road nor bridge had been built; and their naked declarations cannot have a greater effect than would a prior unrecorded deed of which he had no notice. *Hodges* v. *Eddy*, 41 Vt. 485.

There is evidence that at a hearing before a United States engineer in regard to the plans for the bridge the plaintiff, on being asked if a twenty foot movable portion of the bridge would satisfy him, expressed himself as satisfied with an opening in the bridge. This falls far short of assenting to the building of the bridge. The plaintiff's attitude throughout shows that he was opposed to a way or bridge at the point where it was built; and the reasonable inference from his conduct and statement is that the opening proposed would be satisfactory if the bridge had to be built there. Moreover there is no evidence that the statement was heard or acted upon by any of the defendants and it affords no ground of estoppel in this case.

The way was not legally located ; the attempted justification of the defendants fails ; and the liability of defendant Huff, who unlawfully entered upon the plaintiff's land and there built the bridge, is established. The agreed statement recites that the other defendants, the selectmen, "in their official capacity and in behalf of the town" made a written contract with Huff to build the bridge. It is claimed that they were acting as town officers, that this was an official act, and that they are exempt from liability by virtue of R. S., chapter 6, section 91, which says that such officers by reason of such acts

shall not be liable in damages.　Contracting with Huff to enter upon the plaintiff's land and build the bridge was not an official act within the meaning of that section, because it was not an act which it was a part of their official duty to perform.　They did not undertake to make the contract with Huff because as selectmen they had authority to make it, but under a vote of the town that the selectmen eo nomine receive, accept or reject bids for building the whole or any part of the road.　The town could have bestowed the same authority on John Doe or any other private person.　" Towns may authorize their road commissioners or other persons to make contracts for opening or repairing their ways."　R. S., chapter 23, section 75.　The town authorized the selectmen to accept bids for building the bridge, but, as the way had never been legally located, there was no authority in the town to open it or build the bridge.　The town could clothe the selectmen with no authority to employ Huff for that purpose.　He acted under the contract by their authority and direction.　It is well settled that one who directs or authorizes a trespass is equally and jointly liable with him who commits it; and the selectmen cannot escape liability in this case because they undertook to act in behalf of a municipality which itself had no legal power to authorize the entry upon the plaintiff's land.

The plaintiff is entitled to recover nominal damages for the unlawful entry upon his land and such actual damages as he has sustained, if any, by the erection of the bridge.　Plaintiff had a dam, mill privilege and pond some fifty feet south of the bridge, and the only claim made of actual damage is that the bridge has obstructed the plaintiff's right of passage to and from this dam and mill privilege. The cove over which the bridge was built was a public highway. Its navigation was obstructed by the bridge which thereby became a public nuisance.　An action on the case is the appropriate remedy to recover consequential damages such as are claimed by the plaintiff. Without resting our decision on that ground however, or here discussing or deciding whether, as claimed by the defendants, in order for an individual to recover damages arising from a public nuisance he must show that he has sustained an injury differing in kind as well as in degree from that suffered by the general public, it is suffi-

cient to say that the plaintiff has suffered no actual damage either direct or consequential. The damages claimed by him are theoretic and speculative, such as cannot afford ground for recovery. He had no mill on his mill privilege, and there had not been one there for more than thirty years before the bridge was built. He had been "considering an idea" he had for an invention, and was considering putting in a shop and using the privilege for "power to manufacture the invention." He had no definite plans however about building, and never made any attempt to build the shop or use the dam or privilege. That his plans never matured, that his idea never ripened into action, that no shop was built and no invention manufactured therein is, to say the least, as likely to have been a financial benefit as injury to him. He has never actually attempted to go by boat up the Sheepscot River to his mill privilege, has never had any occasion to carry anything up to the dam, and has never as matter of fact in any way been obstructed by the bridge in his use of the river as a highway. Here is no special damage of any kind or of any degree, and in fact no damage at all, except the nominal damage which the law gives for the unlawful entry upon the plaintiff's land.

*Judgment for the plaintiff for one dollar.*