(106 So. 564)

No. 25519.

## MURRELL v. GOODWILL.

(Nov. 30, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Limitation of actions** ⟪⟫32(1)—**Prescription; damages for trespass recoverable, if judicially demanded within one year of discovery of trespass.**

Damages for trespass, such as cutting and removing of timber from land belonging to plaintiff are recoverable, if judicially demanded within one year from date of discovery of trespass.

2. **Trespass** ⟪⟫30—**Defendant held chargeable, at least as cotrespasser.**

Where defendant believing himself to be owner of plaintiff's land, sold timber thereon to third party, who cut and removed it from land, responsibility for trespass is chargeable to defendant, at least as a cotrespasser.

3. **Limitation of actions** ⟪⟫199(1)—**Prescription; plaintiff suing for damages for trespass properly nonsuited, in view of unsatisfactory evidence on plea of prescription.**

In suit for trespass for alleged cutting and removal of timber, *held* that plaintiff was properly nonsuited because of unsatisfactory evidence as to whether citation, which is a prerequisite to interruption of current of prescription, was served in required time after discovery of the trespass.

4. **Action** ⟪⟫52—**Question of ownership held properly before court by consent of parties.**

Where defendant did not question right of plaintiff to cumulate petitory action with demand for damages for trespass, and did not except to petition *held*, that, under Code Prac. arts. 55, 150, issue of ownership was properly before the court by consent of parties.

5. **Adverse possession** ⟪⟫114(1)—**Prescription; plaintiff, in petitory action, held to have met burden of proving better title.**

Evidence, in petitory action, *held* to show that plaintiff and her authors in title had been in actual and undisturbed possession of land involved under title translative thereof for more than 30 years, and that defendant had never been in possession, and was claiming under tax deed, based on dual assessment, and hence plaintiff had met burden of proving better title.

159 LA.—34

Appeal from Second Judicial District Court, Parish of Webster; J. E. Reynolds, Judge.

Petitory action and suit for damages by Mrs. Eva. P. Murrell against Donald Goodwill. From a judgment recognizing plaintiff as owner, and affirming her title to property, and dismissing her demand for damages, defendant appeals. Affirmed.

Roberts & Roberts and Charles M. Roberts, all of Minden, for appellant.

L. K. Watkins, of Minden, for appellee.

BRUNOT, J. This is a petitory action and a suit for damages. The land involved in the petitory action is the west half of the northwest quarter of section 30, township 18, range 10, Webster parish. The alleged cutting and removing of timber by defendant from other lands belonging to plaintiff gave rise to the demand for damages. From a judgment in favor of plaintiff, recognizing her as the owner, and affirming her title to the property sued for, and dismissing her demand for damages, as of nonsuit, defendant appealed. Plaintiff has answered the appeal and prays, in the alternative, that the judgment be amended by decreeing her entitled to a judgment for the damages claimed or for an affirmance of the judgment as rendered.

[1, 2] In considering the issues presented, we will first dispose of plaintiff's claim for damages. Damages for a trespass, such as plaintiff alleges, are recoverable, if judicially demanded within one year from the date of the discovery of the trespass. In this case there is no dispute as to the quantity of timber cut and removed from plaintiff's land, nor as to the price of the timber. The defenses are that the timber was cut by parties other than defendant and that the cause of action therefor is prescribed. We think the first defense is untenable. Defendant, believing himself to be the owner of the land

on which the timber stood, sold the timber to a third party, who cut it and removed it from the land. The responsibility for the trespass is therefore chargeable to the defendant, but, if not wholly so, at least as a cotrespasser.

[3] On the plea of prescription, the trial judge found the evidence too unsatisfactory to form the basis for a definitive judgment thereon, and, upon reading the record, we have reached the same conclusion.

Mr. Phillips, plaintiff's agent, and upon whose testimony she relies, says, substantially, that the suit was filed as soon as he found out the timber had been cut. If Mr. Phillips had not destroyed the effect of this statement by the testimony he subsequently gave, our view might be different. But Mr. Phillips says that he was told the timber had been cut. He was certain the timber was on his daughter's land, but, to make assurance doubly sure, he had the land surveyed. He could not fix the date of the survey, but thought it was about 2 years prior to the date of the trial of this case, in June, 1922. It appears that the petition in this case was filed April 9, 1921. There is no return in the record showing when the petition was served upon the defendant, but the record discloses that defendant's answer to the suit was not filed until May 11, 1922, more than 14 months after the institution of the suit. As Mr. Phillips had knowledge of the cutting of the timber before the survey was made, and does not remember when the survey was made, but thinks it was made about 2 years before the trial, and as the record fails to show when citation was served upon defendant, but does show that the defendant's answer was filed more than 14 months after the filing of the petition, it follows that, as citation is a prerequisite to the interruption of the current of prescription, the evidence upon this point is unsatisfactory and insufficient, and the trial judge correctly nonsuited plaintiff's demand for damages.

[4] On the other cause of action, defendant contends, in his brief, that plaintiff has brought an action unknown to the law; that, although her petition alleges that she is in possession of the property, she is suing to be decreed the owner of it. In support of this contention defendant relies upon the case of Bossier's Heirs v. Jackson et al., 114 La. 707, 38 So. 525, and quotes therefrom the following:

"The familiar rule is stated for illustration: If the party is in possession, his action is possessory. If the owner is not in possession, the action is petitory. If the owner in possession is damaged or annoyed by persons setting up adverse title to his own, the action is for slander of title. If the owner is annoyed and his possession infringed upon by trespasser, his action may be for trespass, and he may in that connection exhibit his title."

In Jackson v. Currie, 144 La. 90, 80 So. 210, this court held that the rule governing the cumulation of petitory and possessory actions was enforceable as a protection to the one in possession, but that it could be waived, and, in that event, the question of ownership was properly before the court. Article 150, C. P., is as follows:

"In possessory actions, one cannot claim, at the same time, both the possession and the ownership; if the two are demanded, it shall be presumed that the possessory has been relinquished in order to resort to the petitory action."

The first paragraph of article 55, C. P., authorizes the cumulation of the two actions by consent of the parties.

"Petitory and possessory actions shall not be cumulated or joined together, except by consent of parties." St. Amand v. Long, 25 La. Ann. 166; Vigo v. Carlon, 48 La. Ann. 665, 19 So. 682; Houssiere Latreille Oil Co v. Jennings Heywood Oil Synd., 115 La. 123, 38 So. 932.

Defendant does not question the right of a plaintiff to cumulate the petitory action with a demand for damages growing out of a trespass. He did not except to the petition filed in this case, and his answer joins issue upon all of plaintiff's allegations ex-

cept those relating to certain property, the title to which he judicially disclaims, and it presents to the court, for adjudication, the question of ownership of all of the property, the title to which, is in dispute. It was on these pleadings that the case was heard and decided by the trial judge. It therefore follows, as a necessary sequence, that defendant cannot now demand in this court the recognition of a right he could have asserted in the lower court, but which right he there waived, or impliedly waived. The defendant has chosen to join issue on the question of title to the property involved in this suit, and therefore, by the consent of the parties, that question is properly before the court.

[5] Plaintiff acquired the property sued for as the universal legatee of her deceased husband. He acquired it from his mother, Mrs. Mary A. Murrell, in November, 1901, by a donation inter vivos. Mrs. Murrell acquired it from Mrs. M. J. and J. E., W. W. and T. J. Jackson, August 23, 1890. The Jacksons acquired it from Murrell Neal and Carter, August 13, 1873. Murrell Neal and Carter acquired it at sheriff's sale in execution of judgment against J. S. Hewitt, and Hewitt acquired it at sheriff's sale of the property of the succession of Hewitt Ivey. This land was entered by A. L. Stamps and James O. Boone.

Mr. B. T. Griffeth testified that, after Mrs. Murrell acquired the property, her son, John Murrell, had control of it, rented it to tenants, and collected the rent. In 1900, and thereafter, the land was assessed to John Murrell and he paid the taxes on it; that in 1900 the land was also assessed to Frank Emmitt; that this was a dual assessment; that Emmitt never dispossessed John Murrell or his tenants and that the Murrells remained in undisturbed possession of the land all the time; that John Murrell was the brother-in-law of witness; that Murrell boarded with witness; that they lived under the same roof until Murrell's death; and that witness was familiar with the property and affairs of his brother-in-law.

Mr. B. S. McIntyre testified that he was well acquainted with the Murrells and that John Murrell handled the property of his mother as his own.

T. J. Jackson testified that the Jacksons owned and cultivated the west half of the northwest quarter of section 30 (which is the land involved in this suit); that this was a part of 520 acres of land the Jacksons owned and witness occupied for about 10 years; that the Jacksons sold this land to John Murrell; that thereafter, for a number of years, the Jacksons rented it from John Murrell; that he does not know in whose name the deed was written, but that John Murrell made the trade for the land; and that he looked after the business affairs of his mother.

Mr. Phillips testified that he is the father and agent of the plaintiff; that he has had possession of the land, as plaintiff's agent, since the death of John Murrell; that he rented it to tenants, collected the rents, and paid the taxes assessed against it; and that John Murrell paid the taxes due thereon for the year it was also assessed to other parties, and sold as their property, under a dual assessment, for the nonpayment of taxes.

Mr. Hillman testified that he has resided near the land sued for since 1871. He first knew it as the property of Hewitt Ivey, then as the Jacksons' property, and then as John Murrell's place. Murrell had charge of it and after he died Mr. Phillips had charge of it for Mrs. Murrell. This witness testified that he never heard of Frank Emmitt until the day before his testimony was given in the case.

Mr. Griffeth was recalled and testified that he had examined the records and that Mr.

Murrell had paid the taxes on the property. This testimony was objected to as not being in rebuttal and the objection was sustained, but later the witness testified, without objection thereto, that he had examined the record from 1895 to the date on which his testimony was given and that the taxes on the west half of the northwest quarter of section 30, township 18 north, range 10 west, were paid by John Murrell during his lifetime and since then they were paid by the plaintiff.

Defendant testified that he acquired the west half of the northwest quarter of section 10, township 18 north, range 10 west, in 1916, by an act of partition of certain properties owned in indivision by himself, his mother, sister, and Mr. Hodge, and since he acquired it he has paid the taxes on this land.

Mr. Roberts testified that, beginning in 1900, the Goodwills, the father, his estate, and finally the defendant, had paid the taxes.

It is clear that there was a dual assessment of the land in 1900 and a double payment of the taxes thereon each succeeding year since that date.

The abstract which was filed in the record by consent of the parties recites that the record does not show that Boone and Stamps, the entrymen, ever sold the property, or from whom and in what manner Curtis D. Ivey and Martha Ivey acquired it. It shows that John Chaffe et al. acquired it at a sheriff's sale, and that they sold it to Murrell Neal and Carter; but it does not show that the heirs of John Chaffe ever acquired it, although these heirs sold it to Frank Emmitt, and the title under which defendant claims is a tax title from Frank Emmitt. In addition to the fact that Emmitt never acquired title to the property, it is established that it was assessed, from the date of Emmitt's alleged purchase, to both Mrs. Murrell and Emmitt; that the Murrells paid the taxes, and, upon the failure of Emmitt to pay them, the prop-

erty was sold under this dual assessment and was bid in by defendant's author in title. From that date to the present time there has been a dual assessment of that property and both claimants have paid taxes thereon. It is not necessary to refer to the deeds filed in the record, or to the date of the recordation of the donation inter vivos from Mrs. Murrell to John Murrell, because these deeds merely verify the facts as we have stated them; and these facts show that plaintiff and her authors in title have been in the actual and undisturbed possession of the land under a title translative thereof for more than 30 years, while defendant has never been in possession, and claims under a tax deed that was an absolute nullity, and which is attacked in the petition on that ground.

Plaintiff has met the burden of proving the better title, which is required in petitory actions. The judgment appealed from is therefore correct, and it is affirmed at appellant's cost.