### 17233.  MORRIS, administrator, *v.* GIBSON.

1. "One who procures or assists in the commission of a trespass, or does an act which ordinarily and naturally induces its commission, is liable therefor as the actual perpetrator." *Burns* v. *Horkan*, 126 *Ga.* 161 (3) (154 S. E. 946). Thus, where the defendant, by undertaking to dispose of the plaintiff's property, became the moving cause of the injury sustained thereto, she rendered herself liable as a joint trespasser with the one actually committing the trespass under such authority. *Burns* v. *Horkan,* supra; *Burch* v. *King*, 14 *Ga. App.* 153 (2) (80 S. E. 664); *Ketchum* v. *Price*, 31 *Ga. App.* 49 (119 S. E. 442).

2. In order to maintain an action in trespass on account of damages to realty, the plaintiff must show either actual possession or that he is the true owner. *Moore* v. *Vickers*, 126 *Ga.* 42 (54 S. E. 814); *Brewer* v. *Waddell*, 141 *Ga.* 528 (81 S. E. 442).

3. Adverse possession of lands, under written evidence of title, for seven years, shall give a title by prescription. Civil Code (1910), § 4169.

4. "Possession under a duly recorded deed will be construed to extend to all the contiguous property embraced therein." Civil Code (1910), § 4167.

5. The word "contiguous," thus used, means to touch. Standard Dictionary; Webster's New International Dictionary. Accordingly, tracts of land which corner with one another are contiguous. *Clements* v. *Crawford County Bank*, 64 Ark. 7 (40 S. W. 132); 2 Words & Phrases, 1496.

6. The same deed may make independent conveyances of two or more separate and non-contiguous tracts of land. In such a case actual possession of one or more of such distinct entities as thus conveyed will not be extended by construction to include them all. Where, however, the several tracts specified in the conveyance are in fact contiguous and therefore constitute but one parcel of land, it is not necessary that it be expressly designated as one parcel by the terms of the deed, and where the several tracts designated as being included by the terms of the conveyance actually adjoin or corner, so as to in fact constitute a single parcel, actual possession of a portion of the premises thus conveyed will be extended by construction to include the entire premises. *Johnson* v. *Simerly*, 90 *Ga.* 612, 615 (16 S. E. 951); *Baxter* v. *Mattox*,

44

106 *Ga.* 344, 351, 352 (32 S. E. 94) ; *Tucker* v. *Wimpey,* 158 *Ga.* 820 (124 S. E. 692).

7. In accordance with the foregoing principles of law, the grant of a nonsuit was erroneous.

DECIDED SEPTEMBER 14, 1926.

Action for damages ; from Floyd superior court—Judge Irwin presiding. January 12, 1926.

*Denny & Wright, Rowell C. Stanton,* for plaintiff.

*Maddox, Matthews & Owens,* for defendant.

JENKINS, P. J.   Charles W. Morris, as administrator of W. A. Adams, deceased, brought suit against Mrs. G. T. Gibson in trespass for $1297, the alleged value of the interest of his intestate as an owner of a half undivided interest in certain lands in certain timber cut therefrom by the defendant, it being alleged in the original petition that the timber was cut by the defendant by and through her agent, Alford.   By amendment the plaintiff struck the allegation that the timber was cut by the defendant acting through her agent, proceeded on the allegation that the timber was cut by the defendant, and alleged that on June 1, 1920, the defendant, acting through her agents Pig Adams and R. L. Brown, pointed out the lot of land in question—lot No. 325—to P. E. Alford as her property, and sold it to Alford and put him in possession thereof, and that, acting upon such representations, Alford cut the timber on said land.   It appears from the evidence that on April 7, 1920, Mrs. Gibson, the defendant, entered into a contract with P. E. and F. L. Alford, whereby she sold to them a certain tract of land lying in the 22d and 23d districts of Floyd county, composed of various lots and portions of lots, and that on May 8, 1920, she executed to the purchasers her bond for title therefor, the premises being known as the Hurt farm.   After the execution of the contract of sale Mrs. Gibson employed Brown, a surveyor, to survey the land sold, instructing him to get Pig Adams, the father of plaintiff's intestate, to point out the lines, as he knew the lines and knew where the property was located.   The surveyor, in company with the purchasers, went upon the premises and surveyed the land under the direction of Pig Adams, and surveyed lot of land No. 325 of the 22d district of said county, as pointed out by said Adams, into the tract sold by Mrs. Gibson to the Alfords.   It appears that under the survey and contract of sale, Alford went into possession of lot of land No. 325, to which

Mrs. Gibson had no title and which was not intended to be included by the terms of the contract. It appears further that on January 6, 1922, Alford and defendant entered into a further contract, whereby Alford agreed to cut the timber on the farm sold to him by defendant and pay defendant $4 per thousand feet of lumber for the same, to be applied on the purchase price of the land, and that under this agreement he cut the timber on lot of land No. 325 and paid the proceeds of the same, at the agreed price, to the defendant, to be applied on the purchase price of the land; and that the defendant told Alford where the corners of the land sold him were, and visited lot 325 on several occasions while he was cutting timber therefrom.

The plaintiff claimed title under a deed to his intestate dated December 30, 1912, conveying the following property: "All that part of lots Nos. 343 and 344 in the twenty-third district and third section of Floyd county, Georgia, and all that part of lot number 324 in the 22nd district and third section of Floyd county, which lies south and west of the following described line: commencing at a point in lot 344 on the east side of the Etowah river, known as the old ferry, and running along the old fence row, bearing east or nearly so, to the Bass ferry road, and across said road and across a field lying east of said road, to the back fence on the east side of said field; thence along said fence in a southwesterly direction until it intersects the district line; thence south until it intersects the line dividing land lots Nos. 323 and 324, in the twenty-second district and third section of Floyd county, the whole tract containing two hundred and seventy acres, more or less. Also an undivided half interest in lot of land No. 325 and all of lot No. 323, both in the 22d district and 3d section of Floyd county, excepting and reserving an undivided one-half interest in all minerals and metals, being the same interest reserved by Mrs. Valeria Bass in deed to G. J. Briant, Sept. 11th, 1865. The property herein conveyed is the same as described in said deed by Mrs. Valeria Bass to G. J. Briant, recorded in Book 'FF,' page 41, except that part lying on the west side of the Etowah river, which has been sold to M. F. Johnson."

It appears that Adams never took actual possession of any portion of lot of land No. 325 under this deed, but that he did go into possession under the deed, that he lived on a portion of the

land and had cultivated a portion of lot of land No. 323, which cornered with and was contiguous to lot of land No. 325, for more than ten years.

At the conclusion of the plaintiff's testimony, upon motion of the defendant's counsel, the court granted a nonsuit, to which ruling exception is taken.

*Judgment reversed. Stephens and Bell, JJ., concur.*