[No. 28296. Department Two. July 29, 1941.]

ETHEL B. FORDNEY, *as Executrix, Respondent,* v. KING
COUNTY *et al., Appellants,* MIKE SERESUM
*et al., Respondents.*[1]

[1]Reported in 115 P. (2d) 667.

*B. Gray Warner* and *Wm. R. Bell,* for appellant King County.

*Geo. H. Crandell,* for appellant Vern Cole Wright, Inc.

*John L. Fitzpatrick,* for respondent Fordney.

*Vanderveer, Bassett & Geisness,* for respondents Seresum *et al.* .

BEALS, J.—For many years prior to the institution of this action, Kate McGuire was the owner of lot 1, block 9, McAllister's addition to the city of Seattle, upon which property stood a frame dwelling, known as 225 Dawson street. The house stood vacant for many years, was in disrepair, and, by the year 1939, was by the fire department considered a fire hazard. At this time, King county owned a vacant lot described as lot 2, block 2, McAllister's addition to the city of Seattle.

February 14, 1939, an official of the Seattle fire department wrote to John P. Angel, the property agent of King county, informing him that the two story vacant frame building, 225 Dawson street, lot 2, block 2, McAllister's addition, was in bad condition, and had become an unnecessary fire hazard, asking that this situation be remedied. It will be noted that the lot described belonged to the county, but the building

described by street and number was that located upon the McGuire lot. The letter came to the attention of a clerk in Mr. Angel's office, who, without the latter's knowledge, delivered the same to Vern Cole Wright, Inc., a corporation dealing in and handling real estate, which had often represented the county in finding tenants for county property, in collecting rents due the county, and other similar matters. A clerk in the office of the corporation, one Tom Bevan, shortly thereafter entered into a written contract, prepared upon a printed form, with one Mike Seresum, purporting to deliver to the latter, in consideration of his agreement to demolish the same, the building described as 225 Dawson street, Seattle. Seresum also paid twenty-five dollars as additional consideration for the privilege of wrecking the house, which money was apparently turned over to King county, and by it retained.

Seresum thereupon proceeded to wreck the McGuire house, but, upon being informed that he was destroying private property, quit work before the job was completed. Kate McGuire thereupon filed her claim against King county, asking damages because of injuries to her property, and later brought suit against King county, Vern Cole Wright, Inc., a corporation, and Mike Seresum and wife, asking for damages resulting from the partial destruction of her house.

After the institution of the action, Kate McGuire died, and Ethel B. Fordney, having been appointed executrix of the McGuire estate, was substituted herein as party plaintiff, and has since prosecuted the action in her representative capacity.

Mike Seresum cross-complained against King county, asking for judgment for one hundred dollars damages for the time and labor expended in wrecking the house, and for the return of the twenty-five dollars he had paid.

The issues having been made up, the action was tried to a jury, which returned a verdict in plaintiff's favor for the sum of nine hundred dollars against all the defendants in the action, and another in the sum of one hundred twenty-five dollars in favor of Mike Seresum, as demanded in his cross-complaint. From a judgment entered upon these verdicts, King county and Vern Cole Wright, Inc., have appealed, King county also appealing from the judgment against it entered in favor of Mike Seresum.

King county assigns error upon the overruling of its demurrer to the amended complaint; upon the denial of its challenge to the sufficiency of the evidence; upon the denial of its motion for a directed verdict; upon the giving of certain instructions and the refusal to give other instructions requested by the county; upon the denial of the county's motion for a new trial and for judgment in its favor notwithstanding the verdict; and upon the entry of judgment against the county in favor of the plaintiff and in favor of Mike Seresum.

Vern Cole Wright, Inc., joins in some of the assignments of error made by appellant county, and also assigns error upon the denial of its challenge to the sufficiency of the evidence, and upon the denial of its motion for judgment in its favor. Mike Seresum and wife did not appeal from the judgment rendered against them in favor of respondent.

We shall refer to King county as the county, to Vern Cole Wright, Inc., as the corporation, and to Mr. and Mrs. Seresum as Seresum. We shall refer to respondent Fordney without noting her representative capacity.

John P. Angel was for many years the regularly appointed property and purchasing agent for King county. Gordon Lynch was his assistant, the office naturally attending to a great many important matters,

covering many fields of county activity. Mike Seresum, desiring to procure some used lumber, inquired of the Seattle fire department concerning buildings available for wrecking. Being referred to Mr. Angel's office, he called there, and was directed to the office of the corporation, where he received a list of buildings, presumably belonging to King county, which were to be demolished. Included in the list was the dwelling described as 225 Dawson street, that building having been placed upon the list after receiving the letter from the chief of the fire department to Mr. Angel. This letter had been, from Mr. Angel's office, referred to the corporation, together with advice from Gordon Lynch to the effect that the fire department wanted the building mentioned demolished.

After some investigation, Seresum selected the house at 225 Dawson street as suited to his purposes, and thereupon entered into the contract above referred to, whereby he agreed, in consideration of the delivery to him of the building, to demolish the same and clear the premises. The contract consists of a completed printed form, describing the property by the house number, with a notation lot 2, block 2, McAllister's addition, the name King county, Washington, being printed, under it being written "By John P. Angel," and under that the initials "G. L. [standing for Gordon Lynch]—T. G. B. [standing for Tom G. Bevan]."

It is not disputed that, at the time this agreement was signed, Seresum delivered twenty-five dollars to Mr. Bevan, as additional consideration, the receipt of the money being noted on the back of the contract.

The record contains evidence to the effect that, at some date prior to the execution of the contract with Seresum, a written agreement describing the property referred to, and signed on behalf of Mr. Angel by Gordon Lynch, had been delivered to the corporation, and

that the agreement which Seresum signed was in effect a duplicate of the document which Mr. Lynch had previously signed.

We shall first consider the appellant county's contentions in support of its argument that the judgment against it and in favor of respondent Fordney should be reversed. Appellant county contends that the trial court erred in submitting the case to the jury, and in entering judgment against the county, contending that appellant county was never represented in the transaction with Seresum by any authorized agent, and never ratified the agreement which the corporation purported to enter into on the county's behalf. Appellant also argues that the act of attempting to authorize the demolition of a building not owned by the county, and in which the county had no interest whatsoever, was clearly *ultra vires* the authority of the county, and utterly beyond the power of its agents, and that for such an act the county cannot be held responsible.

There can be no question but that all parties concerned throughout the transaction acted on the assumption that the dwelling known as 225 Dawson street, Seattle, was located on lot 2, block 2, of McAllister's addition to Seattle, and was owned by King county. It is also manifest that all the negotiations between the parties in fact concerned the dwelling owned by Kate McGuire, located on lot 1, block 9, and numbered 225 Dawson street.

King county, of course, owns a large amount of real estate, much of it being used for various county purposes, other parcels being rented to private parties, while other tracts lie idle. The appointment of a person to fill the position of county purchasing and property agent is a reasonable and, indeed, a necessary act on the part of appellant county. The office is doubtless a busy one. Gordon Lynch was appointed as assistant

purchasing and property agent, and was by the county recognized as such. Mr. Lynch testified that he had held the position for six years, and that during Mr. Angel's absence it was his duty to manage the office and attend to any details requiring action. This would follow from his appointment to the position which he held. Mr. Lynch testified that he was accustomed to act upon letters from the fire department, such as the letter above referred to, while Mr. Angel testified that it was his duty to attend generally to the management and control, sale and rental, of property belonging to the county, and that while he referred some matters for decision to the board of county commissioners, he, enjoyed from them general authority to act for the county. Mr. Angel also testified that, upon being advised by the fire or health departments that certain property was a menace, his office would proceed to comply with such suggestions or orders as he received from the departments referred to.

It also appears that Mr. Lynch had general charge of the matter of the demolition of buildings, and that, at about the period referred to, ten or twenty transactions of a similar nature were handled by the corporation, apparently under his direction.

It appears that Tom Bevan was employed by the corporation as its property manager, and as such, on behalf of the county, attended to a number of transactions similar to that with Seresum. The evidence indicates that other real estate agencies were also employed by appellant county in connection with similar matters.

Appellant county argues that John P. Angel, as its agent and employee, had no authority to delegate his duties to a subagent, and that therefore, as Gordon Lynch referred the transaction to the corporation, appellant county cannot be held responsible.

■ We are convinced that Mr. Angel, as the agent of the county, had authority to bind it in connection with such a contract as that with which we are here concerned, and that the record amply supports the the jury's finding that the acts of Gordon Lynch, as above set forth, are binding upon appellant county. The record contains evidence of similar transactions openly and notoriously handled for appellant county by the office of the county property agent, in the same manner as was handled the transaction with Mike Seresum. The authority of an agent may be implied from an established course of conduct. *Seattle v. Stirrat,* 55 Wash. 560, 104 Pac. 834, 24 L. R. A. (N. S.) 1275.

■ It also appears that appellant county, with full knowledge of the transaction and of the claim made by Kate McGuire, retained the benefits of the contract with Seresum, and kept the twenty-five dollars which the latter had paid. The county's conduct in this particular might well support the jury's verdict. *Coburn v. San Mateo County,* 75 Fed. 520; *Boyer v. Kanawha County Court,* 92 W. Va. 424, 114 S. E. 750; Williams Municipal Liability for Tort, 30.

In the early case of *Commercial Electric Light & Power Co. v. Tacoma,* 20 Wash. 288, 55 Pac. 219, 72 Am. St. 103, this court, speaking through Judge Dunbar, held that evidence of ratification by the city, of the unauthorized and entirely irregular act of its mayor, in tearing down and destroying the plaintiff's electric wires, was admissible in an action by the owner of the wires against the city. Apparently the evidence of ratification which the plaintiff offered, and which the court rejected, was not evidence of any direct ratification, but this court held that the question of ratification was one of fact, and that the evidence offered was competent, and should have been received. The court cited the early Massachusetts case of *Thayer v. Boston,*

19 Pick. 511, 31 Am. Dec. 157, quoting the following language of Chief Justice Shaw:

" 'As a general rule, the corporation is not responsible for the unauthorized and unlawful acts of its officers, though done *colore officii*; it must further appear, that they were expressly authorized to do the acts, by the city government, or that they were done *bona fide* in pursuance of a general authority to act for the city, on the subject to which they relate; or that, in either case, the act was adopted and ratified by the corporation.' "

The court also cited the case of *McGary v. Lafayette*, 12 Rob. (La.) 668, in which a municipal corporation was held liable, on the theory of ratification, for the act of its mayor in demolishing the plaintiff's house, which the mayor supposed stood on public ground.

The facts of the case at bar are such that the jury might well find that respondent suffered damage by reason of the acts of agents of appellant county, done, as stated in the case of *Thayer v. Boston, supra,* "in pursuance of a general authority to act" for the county, or that the acts of the agents had been ratified by the county.

In connection with the argument of appellant county that its liability cannot rest upon any theory of agency, because Seresum could not be authorized to demolish private property which the county did not own, and that such an act is so utterly *ultra vires* the authority of any officer or agent of the county that no county liability can be based thereon, several of our decisions should be considered.

In the case of *Wendel v. Spokane County*, 27 Wash. 121, 67 Pac. 576, 91 Am. St. 825, this court said:

"In discussing the liability of municipal corporations for acts committed by their officers which are defended on the ground of the same being *ultra vires*, we must not lose sight of the distinction which exists between

acts which are absolutely *ultra vires* by reason of the corporation having no authority to act on the subject-matter—it being wholly beyond the scope of its powers—and those acts which in a sense are termed *ultra vires*, where the body has jurisdiction of the subject-matter, but, in the execution of its authority, trespasses upon the rights of others. In the first instance it is conceded by all authority that the corporation is not liable, and in the second, by almost universal modern authority, that it is; that the wrongful act may be the foundation of an action for damages against the corporation, and that such action will lie against the corporation either when the act is done by its officers under its authority or has been ratified by it."

Both appellant county and the respondent admit the soundness of the statement in the *Wendel* case, the county contending that the facts bring it within the first portion of the rule, while respondent contends that this case falls within the second portion of the rule.

In the case of *Commercial Electric Light & Power Co. v. Tacoma, supra,* the court cited Dillon on Municipal Corporations, §§ 968 and 969, in which, referring to the doctrine of *ultra vires,* the different degrees of *ultra vires* are discussed, and attention is called to the liability of municipal corporations under certain circumstances, and their nonliability under others.

Respondent, of course, suffered damage as the result of Seresum's act in destroying the house. This damage was caused by the negligence of the lawful agents of appellant county in carelessly performing an act which, if properly performed, was within the authority of the county, and for this reason the defense of *ultra vires* does not here afford protection to the county. Rem. Rev. Stat., § 3982 [P. C. § 1468], reads as follows:

"The several counties in this state shall have capacity as bodies corporate to sue and be sued in the

manner prescribed by law; to purchase and hold lands within its own limits; to make such contracts, and to purchase and hold such personal property, as may be necessary to its corporate or administrative powers, and to do all other necessary acts in relation to all the property of the county."

By this statute, the legislature has delegated to the respective counties of the state the care and management of their properties. If the agents of the county, in attempting to perform this duty, negligently cause damage to the property of a citizen, the county cannot escape liability under the doctrine of *ultra vires*. A principal cannot escape liability for the wrongful act of his agent, because he had not authorized his agent to commit the particular act which has resulted in damage to another. As was pointed out in the case of *Lee v. Sandy Hill*, 40 N. Y. 442, such an argument, if carried to its logical conclusion, would always protect a municipal corporation from tort liability, as if the act performed was one that the municipal corporation was authorized to perform no tort liability could follow, while if the act was one committed without lawful authority it would be but the act of the municipal officers or agents as individuals.

Pursuant to the statute above quoted, the county enjoys power to care for and manage its property. If a building belonging to the county constitutes a fire hazard, it becomes the duty of the county, through its agents, to correct the situation, either by destroying the building, or by some means causing it to cease being a menace to adjoining property. The agents of the county negligently arranged for the demolition of the house owned by respondent, being under the mistaken belief that it was property owned by the county. Appellant, then, was engaged in exercising its lawful authority, and, indeed, in doing that which it was the county's duty to do, had it owned the property in ques-

tion. The acts of the agents cannot be classified as having been wholly beyond the scope of the power of the county, but fall rather within the second classification referred to by this court in the quotation from the case of *Wendel v. Spokane County, supra,* and again referred to in other authorities above cited. We cannot follow the argument of appellant county that it is not liable, because it was not expressly authorized to destroy property which it did not own, that argument being fallacious for reasons above stated.

Our view finds support in the cases of *Weed v. Borough of Greenwich,* 45 Conn. 170; *McWilliams v. Rome,* 142 Ga. 848, 83 S. E. 945; *McGary v. Lafayette,* 12 Rob. (La.) 668, and on rehearing, at p. 674, on a later appeal 4 La. Ann. 440; *Sheldon v. Kalamazoo,* 24 Mich. 383; *Dooley v. Kansas,* 82 Mo. 444, 52 Am. Rep. 380; *Persons v. Valley City,* 26 N. D. 342, 144 N. W. 675.

Appellant corporation contends that the judgment entered against it should be reversed for want of sufficient evidence to connect the corporation with the act causing the injury complained of. This appellant relies upon the arguments submitted by appellant county, and urges in addition thereto its special defense based upon authorities following the rule laid down in *Winterbottom v. Wright,* 10 Mees. & W. 109, to the effect that one cannot be held liable for a tort in the absence of privity of contract between such party and the plaintiff. The authorities relied on by appellant corporation are not controlling, as we are concerned with the question of the responsibility of appellant corporation for a particular act of trespass expressly authorized and directed by appellant corporation. No question is presented concerning the general liability of a party to a contract to the public at large.

It has often been held that one who authorizes and

directs another to commit an act of trespass is responsible to the owner of property damaged by the trespass (*Donovan v. Consolidated Coal Co.*, 187 Ill. 28, 58 N. E. 290, 79 Am. St. 206; *Murrell v. Goodwill*, 159 La. 1057, 106 So. 564; *Chase v. Cochran*, 102 Me. 431, 67 Atl. 320; *Couch v. Texas & P. R. Co.*, 99 Tex. 464, 90 S. W. 860) ; and that such persons are jointly liable with those who actually do the act (*Morris v. Gibson*, 35 Ga. App. 689, 134 S. E. 796; *Chase v. Cochran, supra*). Neither negligence nor intent are necessary elements of an action for trespass (*Guttner v. Pacific Steam Whaling Co.*, 96 Fed. 617; *Moyer v. Gordon*, 113 Ind. 282, 14 N. E. 476; *Happy Coal Co. v. Smith*, 229 Ky. 716, 17 S. W. (2d) 1008; *Wetzel v. Satterwhite*, 59 Tex. Civ. App. 1, 125 S. W. 93). It is therefore immaterial that, in authorizing the act, the corporation was acting as agent for another (*Morgan v. Langford*, 126 Ga. 58, 54 S. E. 818; *Chase v. Cochran, supra*), and even without benefit to itself.

Both appellant county and appellant corporation assign error upon the giving of certain instructions, and upon the court's refusal to give instructions requested. We find no error in the instructions given, to which exceptions were taken. The jury were correctly informed as to the law under which the respective appellants might be found liable to respondent.

 Complaint is made that, by instruction No. 14, the court permitted the jury to pass upon the question of whether or not the act complained of was *ultra vires* the power of the county. It is insisted that that question constituted a matter of law for the court to determine, and that for this reason the question was improperly submitted to the jury. Assuming for the purposes of argument that the question of *ultra vires* should have been determined by the court as matter of law, any error made in permitting the jury to pass upon this

question was not prejudicial to appellants, as the question, if determined by the court, should have been determined adversely to appellants' contentions. The court did not err in denying the motions of appellant county and appellant corporation for judgment in their favor as matter of law, or in entering judgment against these appellants upon the verdict of the jury.

We find no merit in appellants' assignments of error based upon instructions requested and refused.

Appellant King county assigns error upon the refusal of the trial court to grant its motion for a directed verdict upon the cross-complaint of Seresum, and upon the entry of judgment against appellant county upon the verdict of the jury in Seresum's favor. This matter is discussed only very generally, if at all, in the brief of appellant county, and we find no reason for holding that the trial court erred in entering judgment against the county and in favor of Seresum. As above stated, Seresum did not appeal from the judgment entered against him and in favor of respondent.

Finding no error in the record, the judgment is in all things affirmed.

ROBINSON, C. J., MILLARD, SIMPSON, and JEFFERS, JJ., concur.