EZEKIEL SPITZ *vs.* GEORGE LAMPORT, et als.

Cumberland. Opinion February 22, 1921.

*Measure of damages. Special damages and damages under the general rule. Injured party shall be placed in same position he would have been, had no breach of contract occurred. Consequential damages may be recovered. Notice to the other party to the contract of another contract with a stranger need not be in writing, a verbal notice being sufficient to entitle one to special damages.*

It will serve no useful purpose to analyze the testimony in this case, which is largely written, as the evidence when fully considered sustains the burden of proof in favor of the contention of the plaintiff, of a contract on the part of the defendants to supply him with 500 tons of ice f. o. b. Biddeford, for shipment to New London, Connecticut, and a breach of the contract. The defendants shipped about 100 tons.

The real question in the case is the measure of damages. The plaintiff contends he is entitled to special damages; the defendants that he is entitled to damages under the general rule, if to any; which rule shall control depends upon the testimony. The rule permitting the assessment of special damages is now well established and well defined.

*Held:*

1. That the fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been, if the contract had been performed.

2. That the principle that in case of breach of contract such consequential damages may be recovered as may fairly be presumed to have been in the contemplation of the parties at the time of making the contract, has been affirmed in this State.

3.   That where the plaintiff makes the contract in order to fulfill another contract with a stranger and so informs the defendant, he may recover such damages as the information given would indicate as likely to happen.

4.   That the notice need not be a part of the contract as a verbal notice is sufficient although the contract was written.

5.   That the plaintiff's evidence brings this claim for damages within the rule.


On report.   The plaintiff alleges that on the third day of May, 1919, he bought of defendants five hundred tons of ice at $4.25 per ton, f. o. b. Biddeford; that only about one hundred tons were furnished under the terms of the contract, and that he had sold the ice at a net profit of $5.90 per ton.   At the return term of the Supreme Judicial Court in Cumberland County, October, 1919, the case was being tried to a jury, when by agreement it was taken from the jury and reported to the Law Court for final determination.   Judgment for plaintiff for $2000.00.

Case is stated in the opinion.

*Harry C. Libby, and Joseph E. F. Connolly,* for plaintiff.

*William A. Connellan, and Harry H. Connell,* for defendants.


SITTING:   CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.


SPEAR, J.   It will serve no useful purpose to analyze the testimony in this case, which is largely written, as the evidence when fully considered sustains the burden of proof in favor of the contention of the plaintiff, of a contract on the part of the defendants to supply him with 500 tons of ice f. o. b. Biddeford, for shipment to New London, Connecticut, and a breach of the contract.   The defendants shipped about 100 tons.

The   real question in the case is the measure of damages.—The plaintiff contends he is entitled to special damages; the defendants that he is entitled to damages under the general rule, if to any; which rule shall control depends upon the testimony.   The rule permitting the assessment of special damages is now well established and well defined.   The leading Maine case upon this subject is found in *Thoms* v. *Dingley,* 70 Maine, 100, in which it is said:

"Ordinarily, the measures of damages applying to warranty of personal property is the difference between the actual value of the articles sold and what they would have been worth if as warranted.

*Wright* v. *Roach*, 57 Maine, 600. But this is not an invariable standard. It is not always adequate to produce just results. There are cases where more extended damages are recoverable for special or consequential or exceptional losses.

"The rule that embraces cases of special damages is the one formulated in the case of *Hadley* v. *Baxendale*, 9 Exch., 353. Alderson, B., there said: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract, should be either such as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and were thus known to both parties, the damages resulting from the breach of such contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from the breach of the contract under those special circumstances so known and communicated."

The rule is fully stated and approved in *Hetherington* v. *Firth. Co.*, 210 Mass., 8, in which it is said:

"The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts. When a claim for prospective profits is brought to the test of this principle, recovery can be had where loss of profits is the proximate result of the breach, and is such as in the common course of events reasonably might have been expected, at the time the contract was made, to ensue from a breach, and where it can be determined as a practical matter with a fair degree of certainty what the profits would have been."

Our court in the recent case of *Keeling-Easter Co.* v. *R. B. Dunning & Company*. 113 Maine, 34, have stated the rule as follows:

"The principle that in case of breach of contract such consequential damages may be recovered as may fairly be presumed to have been in the contemplation of the parties at the time of making the contract, has been affirmed in this State. *Miller* v. *Mariner's Church,* 7 Greenl., 51; *True* v. *Telegraph Co.,* 60 Maine, 9; *Grindle* v. *Express Co.,* 67 Maine, 317; *Thoms* v. *Dingley,* 70 Maine, 100. So in Massachusetts. See *Merrimack Mfg. Co.* v. *Quintard,* 107 Mass., 127. So elsewhere, 13 Cyc., 361."

Sedgwick on Damages, Vol. 1, Page 291, says:

"Where the plaintiff makes the contract in order to fulfill another contract with a stranger and so informs the defendant, he may recover such damages as the information given would indicate as likely to happen."

"The notice need not be a part of the contract as a verbal notice is sufficient although the contract was written."

From these cases it may be regarded as a fair deduction to say that one of the important considerations that differentiates the rule of special damages from that of general damages is proof of knowledge of the parties of the special purpose for which the contract is made. The question now arises: Does the evidence bring the plaintiff's claim for damages within the rule? We think it does.

The profits which the plaintiff seeks to recover are not contingent or speculative, but capable of ascertainment. They are the natural and direct result of the breach of the contract. The defendants had notice of the plaintiff's contract of sale to parties in New London at $12.00 per ton. The evidence proves all of these propositions.

The evidence shows that the plaintiff was a coal dealer and engaged in the ice business for the purpose of supplying his coal customers with ice. As a means of doing this, he had made a contract with two men in New London, Connecticut, for a sale of two hundred and fifty tons of ice each, at $12.00 per ton, for delivery during the summer season. The contract and the price were proved, and were executed to the extent of the taking of one hundred tons and payment therefor to the plaintiff at the rate of $12.00 per ton. Hence there was nothing speculative or contingent in regard to the plaintiff's contract for the sale of 500 tons of ice. Accordingly, the loss of the plaintiff's claimed profits was the natural and direct result of the failure of the defendants to deliver the ice, which was to be delivered by the plaintiff to his two contractors.

The defendants' own testimoney shows that they were informed of the contracts the plaintiff had for the sale of the ice to other parties, and, in other respects, fully understood the circumstances and conditions under which the plaintiff entered the ice business and the purposes for which he contracted for the ice.

All the elements necessary to bring the plaintiff within the rule of special damages seem to be well borne out by the evidence.

It further appears that the plaintiff made every reasonable effort that could be required of him to obtain ice elsewhere to enable him to fill his contracts, but without success. He therefore, without fault on his part, lost the benefit of his contracts.

The ice f. o. b. Biddeford was to cost the plaintiff $4.25 per ton, to which was to be added $1.85 freight, making a total cost of $6.10 per ton for the ice in the freight yard at New London.

The plaintiff claims that his damages should be measured by the difference in the cost at New London and his contract price at New London; that is the difference between $12.00 per ton and the cost $6.10, or a net profit of $5.90 per ton, amounting to $2360 on 400 tons, the quantity of ice not delivered. We are of the opinion, however, that, in view of meltage to be borne by the plaintiff, that the damages should not be assessed above $2000.

In fixing this as the fair amount of damages we have not overlooked the specific claim for meltage on the ice shipped via Portland nor the claim for installing the ice box as it is called in the testimony.

*Judgment for plaintiff for*
*$2000.00.*