**Vander W. FORBES**

v.

**WELLS BEACH CASINO, INC., et al.**

Supreme Judicial Court of Maine.

Dec. 27, 1979.

J. Armand Gendron (orally), Sanford, for plaintiff.

Smith, Elliott, Wood & Nelson, P. A., Charles W. Smith (orally), Stephen R. Lamson, Saco, for defendants.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

Appellee Forbes filed a complaint on December 20, 1963, against Wells Beach Casino, Inc. and its two stockholders, Elias M. Loew and Lawrence G. Laskey, requesting specific performance of a contract for the sale of real property in Wells, Maine, and other incidental relief. Forbes thereafter acquired 50 percent of the outstanding stock of Wells Beach Casino, Inc. and amended his complaint to include a supplemental claim for derivative relief.

By agreement of the parties, the matter was heard before a referee in two separate sessions, the first on the issue of liability, the second on the issue of damages. Over appellant Loew's objections to the referee's report, the Superior Court accepted the referee's findings of fact and conclusions of law, and ordered entry of judgment in accordance with the report.

On appeal, Loew contends that the referee's findings regarding the *"fraudulent"* nature of Loew's and Laskey's bids, the validity of Forbes' shareholder derivative action and the appropriateness of the award of damages were clearly erroneous.

We sustain appellant Loew's appeal on the issue of damages only.

We are not unfamiliar with the facts of this case, having rendered two decisions already during the course of this protracted litigation.

In early 1960, Elias Loew and Laskey were each 50 percent stockholders in the Wells Beach Casino Corporation, the principal asset of which was the Casino property, the subject of this suit. Loew was a director and the treasurer of the Corporation, Laskey was a director and the president. On July 20, 1960, Laskey filed a complaint in York County Superior Court charging mismanagement of the Corporation and seeking its dissolution. In connection with this action Loew and Laskey on October 6, 1960, entered into an agreement in writing for the appraisal and sale of the Casino property, and for the liquidation of the Corporation.

Three real estate brokers, named as appraisers in accordance with the terms of the contract, determined the fair market value of the Casino property to be $28,834.00. It was agreed that the property would be sold by sealed bid to the highest bidder. Loew and Laskey agreed that each would be permitted to submit a single sealed bid for the property without deposit. A deposit by certified check in the amount of $1,000.00 was required with all other bids. The property was offered subject to marketable title, free of all encumbrances.

On January 5, 1961, a lease to Elias Loew's brother Moritz Loew dated November, 1958 was recorded. The lease had al-

legedly been given by the Corporation for a period of ten years and five months on a variety store occupying a small portion of the Casino property.

Three bids for the purchase of the Casino property were received. Laskey submitted a bid in the amount of $45,000.00, without deposit, for the property free of encumbrances. Forbes submitted a bid for $39,-100.00, also for the property free of encumbrances, and enclosed the required $1,000.00 deposit. Loew entered a bid for $35,000.00 for the property *"subject to the outstanding lease on the Variety Store,"* without deposit.

In April, 1961 Laskey, having not yet paid in his bid amount, commenced an action against Moritz Loew and the Corporation seeking to have the lease set aside. Seven and one half years later, on November 15, 1968, the action was dismissed under Rule 41(b)(1), M.R.Civ.P., for want of prosecution.

On December 20, 1963, Forbes commenced this action by filing a complaint against the Corporation, Elias M. Loew, Lawrence G. Laskey and Moritz Loew, and by attaching the Casino property. Forbes alleged that the bids of Elias Loew and Laskey were not made in good faith and requested specific performance of their contract to convey the Casino property to the highest bidder, namely, himself. Plaintiff also prayed that the allegedly fraudulent lease to Moritz Loew be declared null and void, or, if found valid, be assigned to Forbes.

Elias Loew filed a motion to dismiss for want of personal jurisdiction over him. The motion was ultimately reported to this Court. On May 11, 1966, we held that personal jurisdiction was constitutionally permissible under our *"long arm statute."* *Forbes v. Wells Beach Casino, Inc.,* Me., 219 A.2d 542 (1966).

On August 14, 1964, the Town of Wells filed liens against the Casino property for the collection of unpaid taxes in the amount of $1,800.40 tax plus $64.48 interest. In April, 1966, after the liens had matured, the Town of Wells brought suit against the Corporation to confirm its title. In April, 1968 Elias Loew individually paid $15,000.00 to Wells. The Town conveyed title in the property to Loew, individually, reserving a portion of the property to itself.

On July 5, 1968, Forbes filed supplemental pleadings seeking to have Loew adjudged a constructive trustee for all parties in interest in the property, including Forbes, and subject to his demand for specific performance.

On December 2, 1968, Wells Beach Casino, Inc. had its corporate charter suspended for non-payment of franchise taxes.

Laskey was defaulted in the pending suit, and a default judgment was entered against him on November 22, 1969. Forbes subsequently acquired Laskey's 50 percent stock ownership of the Corporation, and in July, 1970 filed a second supplemental pleading alleging a deadlock in management and requesting dissolution of the Corporation.[1] Forbes also alleged that Loew's individual purchase of the Casino property constituted a fraud upon the Corporation and its stockholders. On the same date, Forbes voluntarily dismissed as to Moritz Loew, the lease having terminated by lapse of time.

The Superior Court dismissed the complaint and supplemental pleadings for failure to state a claim upon which relief can be granted, under M.R.Civ.P. 12(b)(6), whereupon Forbes appealed. Forbes' appeal was sustained. That decision dated June 28, 1973, held that the agreement between Loew and Laskey to sell the Casino property for the highest cash bid was an unconditional contract rather than an

---

1. In his supplemental pleading to the original complaint, Forbes alleged that he *"purchased from said Lawrence G. Laskey four (4) shares of the common capital stock of said Wells Beach Casino, Inc., and from Herman A. Mintz, one (1) share of the common capital stock . .*

[which shares] *represent fifty percent (50%) of all the shares of capital stock of said Wells Beach Casino, Inc."* It is unclear how or when Mintz acquired his single share, but this factual discrepancy can be disregarded for the purposes of this opinion.

agreement for the solicitation of offers. We also found that Forbes had standing to bring a shareholder's derivative action for the purpose of remedying any wrongs that may have occurred prior to the acquisition of his shares of stock. *Forbes v. Wells Beach Casino, Inc.*, Me., 307 A.2d 210 (1973) (hereinafter referred to as *Forbes II.*)

On remand, the case was heard before a referee by agreement of the parties. In accord with Rule 53, M.R.Civ.P., the Superior Court found specifically that there was evidence of probative value to support the referee's findings:

(1) that Forbes is a valid stockholder of 50 percent of the capital stock of Wells Beach Casino, Inc.;

(2) that there was no collusion between Forbes and Laskey;

(3) that Loew's and Laskey's bids were both fraudulent;

(4) that Forbes was the highest good faith bidder;

(5) that the Casino property conveyed to Lowe individually by the Town of Wells is held by Loew as constructive trustee;

(6) that Forbes is entitled to dissolution of the Casino Corporation;

(7) that Forbes is entitled to damages as found by the referee.

The Superior Court found that the referee's conclusions of law were in accord with the Law Court's *Forbes II* decision, and ordered entry of judgment in accordance with the report, to wit:

(1) that Elias M. Loew convey the subject real estate, acquired by him from the Town of Wells, to Wells Beach Casino, Inc.;

(2) that a receiver be appointed for the dissolution of Wells Beach Casino, Inc.;

(3) that said receiver convey the real estate in question to Forbes for the consideration set forth in his bid, $39,-100.00;

(4) that Forbes recover from Elias M. Loew, individually, and against Wells Beach Casino, Inc., jointly and sever-

ally, but with only one satisfaction, compensatory damages in the amount of $190,021.89, punitive damages in the amount of $15,000.00, and damages in the amount of $6,919.60 for land contracted to be sold to plaintiff, but reserved by the Town of Wells in its conveyance to Loew, individually.

## SCOPE OF APPELLATE REVIEW:

As a preliminary matter, Loew argues that where, as here, the referee bases his findings of fact on a demonstrably erroneous rationale, the Law Court must reject the findings as clearly erroneous. Rule 53, M.R.Civ.P. requires that the court in which the action is pending adopt the referee's findings of fact unless clearly erroneous. Rule 52, M.R.Civ.P., states that on review, "[f]*indings of fact shall not be set aside unless clearly erroneous . . . . The findings of a referee, to the extent that the courts adopts them, shall be considered as the findings of the court.*" [Emphasis added]. In the instant case, the Superior Court Justice found that there was evidence of probative value to support the referee's findings of fact. He did not explicitly adopt the referee's rationale, which, therefore, is not before this Court on review. The findings of the Superior Court will be upheld if supported by credible evidence on the record. *Jolicoeur v. Kennebec Water District*, Me., 356 A.2d 193 (1976).

## SPECIFIC PERFORMANCE:

In *Forbes II*, we interpreted the agreement between Loew and Laskey for the sale of the Casino property to be a binding contract to sell for the highest cash bid. We construed the words *"highest cash offer"* to mean the highest *good faith* cash offer, and concluded *"that if the Plaintiff can demonstrate that Laskey's higher bid was not bona fide, then Plaintiff is entitled to purchase the property."* 307 A.2d at 220.

*A. Whether plaintiff is the highest good faith bidder.*

Loew contends on appeal that the finding that Laskey's bid was fraudulent was clear-

ly erroneous. In 1969, a judgment by default was entered against Laskey pursuant to Rule 55. The entry of a default judgment against Laskey was in this case entirely appropriate.

When a default is entered, facts necessary to sustain the plaintiff's action are established, *Dunlap v. Glidden*, 34 Me. 517 (1852), and averments of the plaintiff's complaint are taken as true and, in effect, become findings of fact. *Sheepscot Land Corp. v. Gregory*, Me., 383 A.2d 16 (1978). Forbes' complaint alleges in part that Laskey's bid *"was not made in good faith"*. As to Laskey, this fact is conclusively established.

In response to Loew's claim that the finding of fraud was clearly erroneous as to him, Forbes contends that the doctrine of collateral estoppel bars Loew from challenging the claim for specific performance. The referee, however, never relied upon the default judgment entered against Laskey to establish the fact that Laskey's bid was fraudulent. Rather, he proceeded to examine the merits of the claim and reached the factual conclusion that Laskey's bid was indeed fraudulently made. In *Hossler v. Barry*, Me., 403 A.2d 762 (1979), we rejected the requirement of mutuality of estoppel, but held that the Court *need not sanction its use* if the estoppel would work a particular unfairness to the defendant. We need not, therefore, reach the issue of whether an estoppel *could have been* appropriately invoked in this case.

The record on appeal offers credible evidence in support of the finding that Laskey's bid was not *bona fide*. This evidence includes the history of the dispute between Loew and Laskey and the facts that Laskey had no deposit at risk when he entered his bid, that he commenced a lawsuit in 1961 seeking to assure the orderly liquidation of the property, which suit was later dismissed for want of prosecution, that he never sought specific performance of the sales contract, and that he allowed a default judgment to be entered against him in the present suit.

We hold that Forbes submitted the highest good faith bid, and as such is entitled to specific performance of the contract for the sale of the Casino property.

**B.    Whether Loew is a constructive trustee of the Casino property.**

Title to the Casino property is now in the name of appellant Loew. To enable Forbes to succeed in his claim for specific performance, therefore, Loew must be found to be constructive trustee of the subject property for the benefit of the Corporation.

> A constructive trust will be imposed by the Courts in order to do equity and prevent unjust enrichment when title to property is acquired by fraud, duress, undue influence or is acquired or retained in violation of a fiduciary relation. *Chandler v. Dubey*, Me., 325 A.2d 6, 8 (1974).

Loew contends that the imposition of a constructive trust on the Casino property was clearly erroneous because it was based on an erroneous finding by the referee that Loew breached his fiduciary duty as an officer and director of the Corporation. Loew asserts that he was not personally obligated as treasurer to pay the corporate debts, and that he was not disabled as director from purchasing the corporate property. Loew argues further that Forbes is barred from complaining about acts of corporate mismanagement because he acquired his shares from Laskey, who allegedly participated or acquiesced in these acts. For this proposition, defendant Loew cites *Bangor Punta Operations v. Bangor & A. R. Co.*, 417 U.S. 703, 714, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418, 427 (1974), in which the United States Supreme Court wrote:

> In *Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210, 223 n. 10 (1973), the Maine Supreme Judicial Court recently declared that it had long accepted the equitable principle that a "stockholder has no standing if either he or his vendor participated or acquiesced in the wrong . . ." *See Hyams v. Old Dominion Co., 113 Me. 294, 302, 93 A. 747, 750 (1915).*

It is true there was no fiduciary duty owed to Forbes prior to his acquisition of

Laskey's shares of corporate stock. The obligation flowing to Forbes at that time was purely contractual. Forbes acquired Laskey's stockholdings only *after* the Casino property had been purchased from the Town of Wells by Loew individually.

We stated in *Forbes II* that Forbes had standing to bring a derivative action to remedy wrongs that may have occurred prior to his acquisition of his shares of stock. We did not consider then, and it is unclear from the present record on appeal, the extent of Laskey's knowledge of the tax liens. Loew directs our attention to his letter written April 15, 1966, to Laskey's attorney which advises that Laskey may *"take any action that he can to protect his interest in this property"*, and gives notice that

> I [Loew] *intend to take action to protect the money I have advanced to the Corporation because of* [Laskey's] *refusal to pay one-half the taxes . . . . I urge you to get in touch with your attorney in Maine, to try to recoup this property as it looks very much like the Town of Wells may be able to keep this property for $6,000.00 back taxes.*

▮ Rather than remand for consideration of this issue, however, we find that Forbes is entitled to specific performance as a third party beneficiary of the contract to sell entered into by Laskey and Loew. As a result of that contract, the Corporation was under a specifically enforceable obligation to transfer the Casino property to Forbes. This the Corporation did not do. Instead, because of a corporate deadlock, tax liens against the property were allowed to mature. The contractual breach resulted from management's intentional inaction, which inaction was a breach of the fiduciary obligations of management to exercise all due care and vigilance to safeguard corporate property. *Atlantic Acoustical & Insulation Co. v. Moreira*, Me., 348 A.2d 263 (1975).

▮ It is well settled that a constructive trust may be imposed upon property in the hands of a third party if the third party is not a bona fide purchaser. *See generally, Scott on Trusts*, § 469 (1967). *"He who acquires a legal title, having notice of the*

*prior equity of another, becomes a trustee for that other to the extent of his equity."* *Wilson v. Mason*, 5 U.S. (1 Cranch) 45, 100, 2 L.Ed. 29 (1801).

It is sufficient to note that Loew had knowledge of Forbes' equitable interest in the Casino property at the time he acquired title thereto from the Town of Wells. The Superior Court was not in error when it impressed the property with a trust.

CORPORATE DISSOLUTION:

In 1970, Forbes filed a second supplemental pleading in which he sought dissolution of the Corporation. Dissolution was ordered by the Superior Court pursuant to Title 13-A M.R.S.A. § 1115. This section provides in part that the Superior Court can decree the dissolution of a corporation if:

A. *The directors of the corporation are so divided respecting the management of the corporation's business and affairs that the votes required for action by the board of directors cannot be obtained and the shareholders are unable to terminate the division, with the consequence that the corporation is suffering or will suffer irreparable injury, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally; or*

. . . . .

D. *The acts of the directors or those in control of the corporation are illegal or fraudulent; or*

E. *The corporate assets are being misapplied or wasted; or . . .*

G. *The corporation has abandoned its business and has failed, within a reasonable time, to take steps to dissolve and liquidate its affairs and distribute its assets.*

Defendant Loew appeals the Superior Court's finding that plaintiff is entitled to dissolution of the Corporation, first by challenging Forbes' status as a shareholder. He bases this challenge in part upon the fact that the Corporation's charter had been sus-

pended pursuant to Title 36 M.R.S.A. § 2406 (repealed, 1973, eff. December 31, 1974) prior to the time Laskey transferred his shares to Loew.

■ The referee found in his report that plaintiff is a valid stockholder of 50 percent of the capital stock of the Corporation, reasoning that *'[t]he suspension does not preclude a stockholder from selling his stock of the corporation to a third party."*

We agree.

Section 2406 provided for suspension of a corporate charter upon nonpayment of corporate franchise taxes. The statute mandated that *"the Secretary of State . . shall suspend its charter and such corporation shall have no right to use the same."* Under § 2407 of Title 36 (repealed, 1975), a charter that had been suspended could be revived by payment of all overdue franchise taxes.

Suspension of Wells Beach Casino's corporate charter was merely a temporary restriction of its right to conduct business in its corporate name. It did not extinguish the Corporation's property rights in its assets.

A share of stock is a proportional ownership in the Corporation itself. *Zamore. v. Whitten,* Me., 395 A.2d 435 (1978). Suspension did not extinguish the Corporation's property rights; neither did it extinguish those of its stockholders. Loew's challenge to Forbes' stock ownership is without merit.

■ Loew's second challenge to the decree for dissolution is based upon the earlier argument that Forbes is estopped to request dissolution. Loew alleges that Forbes achieved the requisite stockholder status by acquiring shares from Laskey who participated or acquiesced in the mismanagement that is the basis for the dissolution. This challenge is also groundless. It is abundantly clear that, given the relationship between Loew and Forbes, the *present* shareholders, the business and affairs of the Corporation cannot be advantageously conducted. It is also clear that the business of the Corporation has been abandoned within the meaning of subsection G of § 1115. The Superior Court properly ordered dissolution of the Corporation.

DAMAGES:

In addition to specific performance, the referee recommended three separate damage awards: special damages for the alleged increase in the costs of constructing a motel and a mini-mall, so-called, which increased costs resulted from the ten-year delay in performance of the contract; general damages for the value of that portion of the Casino property reserved by the Town of Wells subsequent to its tax lien foreclosure; and punitive damages for Forbes' aggravation and mental anguish caused by Loew's *"fraudulent acts".* The Superior Court ordered judgment to be entered in accordance with the referee's recommendations. The damages were assessed against Loew individually and against the Corporation jointly and severally, but with only one satisfaction allowed. Loew challenges each of the three damages awards as clearly erroneous.

*A. Special Damages:*

■ The purpose of an award of compensatory damages for breach of contract is to place plaintiff in the same position he would have been in had there been no breach. *Spitz v. Lamport,* 119 Me. 566, 112 A. 522 (1921). In an action for the breach of a contract to convey real property, the plaintiff is entitled to recover as general damages the fair market value of the land on the date of breach less the contract price. *Doherty v. Dolan,* 65 Me. 87 (1876). Alternatively, as here, the plaintiff may seek specific performance. Special damages may be awarded in addition to the award of general damages or specific performance. To be entitled to these, the plaintiff must establish:

(1) *the amount of his damages to a reasonable, as distinguished from a mathematical, certainty, McDougal v. Hunt,* 146 Me. 10, 14, 76 A.2d 857, 860 (1950); and

(2) *that the damages for which he seeks compensation were reasonably within*

the contemplation of the contracting parties when the agreement was made. *Winship v. Brewer School Committee*, Me., 390 A.2d 1089 (1978). In the instant case, the referee relied on an eminent domain case for the proposition that the measure for just compensation is the land's value at its highest and best use, *Curtis v. Maine State Highway Commission*, 160 Me. 262, 203 A.2d 451 (1964). He then based his recommendation as to damages on the fact

> that the property is zoned business and/or commercial and that the highest and best use of the property is for commercial purposes, namely, motel, restaurant . . . etc., catering to the tourist trade.

At the hearing on damages, appellant's son, Vander Forbes, Jr., testified that had his father obtained the Casino property in 1961, he would have operated the Casino for a time to *"see what we would come up with"*. He contended that history has proven the Casino would have operated at a loss, that the building, therefore, would have been torn down, and that a motel and mini-mall complex would have been built in 1967. Forbes introduced into evidence a plan for a mini-mall which was prepared in 1977. A construction expert testified to the costs of labor and materials in 1967 and in 1977. The referee based his recommended damage award on the difference between these figures.

■■■ We must reject the award of special damages. The referee's assessment of damages based on the highest and best use of the land was an error of law. Even had the proper standard been applied, however, there is no basis in the evidence for a finding that, at the time the contract was made, Loew or the Corporation had knowledge of Forbes' plans for a motel and mini-mall complex. Neither is there evidence on which a reasonable assessment of damages

could be made. Plans drawn sixteen years after the contract was entered into are insufficient support for Forbes' claim, and we reject the Superior Court's award of special damages as based on evidence overly speculative in nature. *E. g., Chase v. Cochran*, 102 Me. 431, 67 A. 320 (1907).

### B. General Damages:

■■■ The Superior Court awarded Forbes $6,919.00 for the land reserved by the Town of Wells. The referee computed the value of the reservation based on a value of $1.00 per square foot. Plaintiff had bid $39,100.00 for the Casino property, which was comprised of 38,728 square feet of land. In actions premised on the partial breach of a land sale contract, we have held that

> plaintiff is entitled to judgment for such a sum in damages, with the interest of it, as the value of those pieces, compared with the whole consideration paid, bears to the whole purchase price. *Wheeler v. Hatch*, 12 Me. 389, 390 (1835).

The referee's recommendation as to amount is thus appropriate. The Superior Court Justice acted appropriately when he ordered judgment entered in accordance with such recommendation.

### C. Punitive Damages:

■■■ The referee recommended an award of punitive damages in the amount of $15,000.00. As a general rule, exemplary damages are not recoverable for a breach of contract. *See generally*, 25 C.J.S. *Damages* § 120. No tort liability was found by either the referee or the Superior Court. The assessment of punitive damages, therefore, is an error of law.

■■■ The referee did find that appellants Loew's and Laskey's bids were fraudulently made.[2] There is a distinction, however, that this Court has explained in the past, between fraud that will vitiate a contract and fraud that is actionable as deceit:

> *fraudulent acts to cause the plaintiff such intangible factors as aggravation and mental anguish as well as such tangible costs as those of litigation, without making monetary restitution.* [Emphasis added]

2. As no finding of *"fraud"* was otherwise made, it must be assumed that the referee was referring to Loew's fraudulent bid when he reasoned

> The defendant, considering his financial status, cannot be permitted through his

*There is a clear distinction between the general term fraud and the specific term deceit or fraudulent representations, and the facts to substantiate the one may be inadequate to substantiate the other. . . . [W]hen at the time of the purchase of the goods there is an intent never to pay for them, the sale may be avoided for fraud,* "although no false and fraudulent representations are made by the purchaser." *. . . To sustain* [an action of deceit], *the representations if material and false must be of some existing facts. . . . Albee v. Laroux,* 122 Me. 273, 275, 119 A. 626, 627 (1923).

Accordingly, we reject the award of punitive damages.

The entry must be:

Appeal sustained in part, denied in part.

Judgment for plaintiff for compensatory damages in the amount of $190,051.89 and for punitive damages in the amount of $15,-000.00 reversed; otherwise the judgment of the Superior Court affirmed.

Costs allowed to neither party.

WERNICK and GLASSMAN, JJ., did not sit.