STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-214

GAB -YOR- 6/7/2001

WATERSPORTS OF WELLS, INC.,

Plaintiff

v.

ORDER

SCOTT L. THOMPSON and
KENNETH SIELER d/b/a QUALITY
MARINE RELOCATORS,

Defendants

Pending is Quality Marine Relocators' Motion for Summary Judgment.

Following hearing, the Motion is Denied.

## BACKGROUND

In June 1999, Watersports of Wells purchased a thirty-one foot parasail boat

from Commercial Water Sports in Lake Havasu City, Arizona. **Complaint ¶ 3.** It is

alleged that Defendants were responsible for transporting the boat to Maine.

**Complaint ¶ 4.** Plaintiff has alleged that while transporting the boat, the truck was

negligently operated by Scott Thompson, resulting in an accident and damage to the

boat. **Complaint ¶ 5.** Defendant has moved for summary judgment arguing that

Quality Marine Relocators (QMR) did not employ Scott Thompson, or own the

truck used for transporting the boat.[1] DSMF ¶ 1.

---

[1] Defendants also argued that the minimal contacts necessary for the exercise of personal
jurisdiction in Maine were lacking. At oral argument, however, this argument was abandoned.

More specifically, Harold Zimmerman, the owner of QMR, has alleged that a representative from Commercial Water Sports called and asked him if he could haul the boat to Maine. DSMF ¶ 5. It is alleged that Zimmerman was unable to do so, but stated that he would try to find another driver. DSMF ¶ 6. Zimmerman allegedly called Scott Thompson, an independent trucker, and asked if he wanted the job. DSMF ¶ 7. Zimmerman has alleged that Scott Thompson agreed and hauled the boat using his own truck. DSMF ¶ 8. There was no written agreement between Zimmerman and Thompson. PSMF ¶ 4. Zimmerman testified that he has never seen Plaintiff's boat. PSMF ¶ 7.

Plaintiff's version of the facts surrounding the transport of the boat is considerably different. Plaintiff alleges that Anthony Coleman, an agent/officer of Watersports of Wells, saw the boat being lifted on to Zimmerman's trailer in Arizona just before being hauled. PSMF ¶ 17. Coleman allegedly recalls that there were some problems loading the boat on the trailer, so Commercial Watersports telephoned Zimmerman. PSMF ¶ 18. Zimmerman, it is alleged, subsequently arrived during the process of loading the boat. PSMF ¶ 19.

When the boat arrived in Maine, Coleman observed that the propeller and strut were damaged. PSMF ¶ 21. Plaintiff alleges that Coleman and Zimmerman discussed the damage over the telephone and Zimmerman asked Coleman to accept replacement parts to repair the boat at Zimmerman's expense in lieu of a claim against Zimmerman and Zimmerman's insurance company. PSMF ¶ 22. These repair parts were allegedly sent to Plaintiff. DSMF ¶ 13.

Zimmerman prepared the freight bill after Thompson returned to Arizona. PSMF ¶ 10. The total bill, prepared on Quality Marine Relocator's letterhead, was $ 2,592.00. **Exhibit 4, attached to Zimmerman's Depo.** Zimmerman "loaned" Thompson $2,592.00 and did not ask for a receipt for this loan. **PSMF ¶ 14.** Zimmerman expected to be paid back by Watersports of Wells or the insurance company. **Zimmerman Depo. p. 49.** Approximately one year ago, Zimmerman's insurance company reimbursed him for the money "loaned" to Thompson. **PSMF ¶ 16.**

Zimmerman, however, has alleged that after the accident he merely attempted to help Thompson by calling Plaintiff and working out a resolution to the damage claim and subsequently arranged to have repair parts shipped to the Plaintiff from Commercial Water Sports. [2] DSMF ¶ 13. Zimmerman alleges that assisting Thompson in this manner was his only connection to this case and that because he did not employ Scott Thompson or own the truck used for transport, summary judgment should be granted. Plaintiff argues that QMR is liable for the damage to the boat under the doctrines of apparent authority and/or agency by estoppel and/or ratification.

## DISCUSSION

Whether an agency relationship exists is generally a question of fact. Steelstone Industries v. North Ridge Ltd, 1999 ME 132, ¶ 12, 735 A.2d 980, 983.

---

[2] Defendants have Counterclaimed alleging that Plaintiff agreed to pay the freight due upon receipt of certain repair parts. Counterclaim ¶¶ 1-4. QMR, it is alleged, delivered the parts, yet Plaintiff failed to pay any portion of the freight. Counterclaim ¶ 5-6.

Apparent authority is authority "which, though not actually granted, the principal knowingly permits the agent to exercise or which he holds him out as possessing. Apparent authority exists only when the *conduct of the principal* leads a third party to believe that a given party is his agent." Id. ¶ 13 (italics in original). Apparent authority can arise if the principal knowingly or negligently holds someone out as possessing authority to act for him or her or it. Id. "A principal therefore, creates apparent authority 'by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Id. (citing RESTATEMENT (SECOND) OF AGENCY § 27 (1958)). Apparent authority exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized. RESTATEMENT (SECOND) OF AGENCY § 8, comment c.

Plaintiff argues that Zimmerman knowingly or negligently held Thompson out as QMR's agent and that they reasonably believed, based on Zimmerman's conduct, that Zimmerman (or QMR) was the principal and that Thompson was his agent.

Defendants' argument is threefold. First, Defendants argue that even if apparent authority existed, the only party who might have relied upon this apparent authority is Commercial Watersports, because they consigned the boat to Thompson for shipment. Defendants also argue that Plaintiff cannot rely upon events occurring after the shipment to establish apparent authority or estoppel. Finally,

4

Defendants argue that the facts upon which Plaintiff relies are not admissible in the summary judgment context because they are not based on personal knowledge and are conclusory. Defendants' arguments regarding the admissibility of Plaintiff's statement of material facts will be addressed as they arise within Defendants' other arguments.

Turning to Defendants' first argument, Defendants contend that the undisputed facts reveal no reliance whatsoever by Plaintiff upon QMR. Defendants state that Mr. Coleman's affidavit, when stripped of inadmissible allegations, do not establish any contact at all between Plaintiff and QMR prior to shipment.

However, a question of fact has been generated regarding the contact between Plaintiff and Zimmerman when the boat was being prepared for transport. Plaintiff has alleged that QMR owned the trailer used to haul the boat and that Zimmerman was present when the boat was put on the trailer. Although Plaintiff has not indicated how Mr. Coleman came to know that the trailer belonged to QMR this is not "obviously beyond his personal knowledge." Similarly, Defendants argue that Mr. Coleman's Affidavit sets forth no foundation for identifying Zimmerman as the person who "arrived when Commercial Water Sports was attempting to put blocks under the boat on Defendant's trailer." Coleman Affidavit ¶ 3. Although Coleman did not specifically indicate how he was able to identify Zimmerman, this fact is not without foundation. Mr. Coleman's affidavit stated that there were problems

5

putting the boat on the trailer so Commercial Water Sports phoned Zimmerman[3]. Coleman Affidavit ¶ 2. According to Coleman's affidavit, Zimmerman then arrived on the scene. Therefore, Coleman has provided a basis for the identification of Zimmerman. Coleman has also alleged that "at all times, Defendant Zimmerman led me to believe that he was totally responsible for the transport of the boat from Arizona to Maine, and that the driver of the truck was acting on his behalf. Coleman Affidavit ¶ 17.[4]

Therefore, a factual issue has been generated regarding if there was contact between Zimmerman and Coleman when the boat was being loaded on to the trailer. If so, Zimmerman's conduct must be scrutinized to determine whether or not his actions/words could be reasonably interpreted as causing Coleman to believe that an agency relationship existed between QMR and Thompson.

Defendants next argue that the post-shipment events cannot establish apparent authority. Defendants contend that regardless of how Plaintiff interpreted Zimmerman's post-shipment involvement, the law does not render Defendant liable for helping out after the fact. Defendants cite <u>Libby v. Concord General Mutual Insurance Co.</u>, 452 A.2d 979 (Me. 1982) to support their position. In <u>Libby</u> the Law Court held that the insurance agency through which the insured tortfeasor

---

[3] Defendants argue that statements made by representatives of Commercial Water Sports are hearsay. However, this statement may be admitted for the effect on the listener - that is, Coleman's belief as to the identity of Zimmerman who allegedly subsequently arrived to help load the boat on the trailer.

[4] Defendants have objected to this "conclusory and self-serving statement." Although this statement could possibly be classified as conclusory, it is based on Coleman's personal knowledge.

6

obtained his policy, Savary's Insurance Agency, was not an agent of Concord Mutual Insurance Company, and therefore notice to the agency by the plaintiff did not constitute notice of a claim to the insurance company. The plaintiff relied in part upon the theory of apparent authority, pointing to various forms sent to the insured tortfeasor by the insurance company listing Savary's Insurance Agency under the caption of "agent." However, in light of all the evidence, these facts were found to be inadequate to support a finding of apparent authority. Id. at 982. The Law Court was persuaded by the fact that the insured tortfeasor's initial application was not issued by Concord and the contract signed by the insurance agency and tortfeasor specifically disclaimed any agency relationship. The Law Court noted that "there can be no apparent authority created by an undisclosed principle." Id. at 983. As well, the plaintiffs were apparently unaware of Concord's existence until months after they had recovered final judgment against the tortfeasor. The Law Court therefore held that Concord had not acted in such a way as to make plaintiffs believe that Savary was its agent.

This case can be distinguished from Libby. Unlike Libby, the Plaintiff in the present case has alleged and argued that from the beginning of the events in question Zimmerman was involved in such a way as to represent that Thompson was his agent. Zimmerman's post-shipment conduct (preparing the freight bill, shipping repair parts to Plaintiff), at the very least could confirm and support Plaintiff's allegations regarding Zimmerman's agency relationship with Thompson.

7

Plaintiff has also argued that QMR may be liable under the theories of ratification and agency by estoppel. However, neither of these doctrines would seem to apply to the present case.

In conclusion, Plaintiff has generated an issue of material fact regarding whether or not QMR is liable under the doctrine of apparent authority.

The clerk may incorporate this order in the docket by reference.

Dated:        June 18, 2001

_____
G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:
Ronald Coles, Esq.
COLES & THOMPSON
PO Box 1028
Kennebunk  Me  04043-1028

DEFENDANTS:
Frederick Moore, Esq.
ROBINSON KRIGER & MCCALLUM
PO Box 568
Portland Me 04112-0568

STATE OF MAINE                                          SUPERIOR COURT
                                                         CIVIL ACTION
YORK, ss.                                            DOCKET NO. CV-00-214

WATERSPORTS OF WELLS, INC.,

                    Plaintiff

                                              ORDER        DONALD L. GARBRECHT
    v.                                         AND           LAW LIBRARY
                                             DECISION

                                                            JAN 9 2003
SCOTT THOMPSON and KENNETH
SIELER d/b/a QUALITY MARINE
RELOCATERS,

                    Defendants


        In August of 2000 the plaintiff Watersports of Wells, Inc., a domestic corporation,

sued Scott Thompson and Kenneth Sieler seeking a judgment for damages to the

plaintiff's boat that the plaintiff claims were caused by the defendants' negligent

transportation of the boat from Arizona to Maine. Kenneth Sieler answered and

counterclaimed for unpaid freight charges.

        By an order of April 2001 the case was recaptioned as Watersports v. Scott

Thompson and Harold Zimmerman. Eventually in June of 2001 service was made upon

Scott Thompson through an agreement between counsel. He then answered and

counterclaimed in a timely manner. It does not appear that Harold Zimmerman has

been served or that Mr. Sieler has been formally removed from the case.

        Defendants Thompson and his unincorporated business Quality Marine

Relocators have moved for summary judgment. Its first argument is that the plaintiff

was suspended as a corporation by the Maine Secretary of State on August 20, 2001 for

failure to file its 2001 annual report, the suspension remains in effect and that the

plaintiff has lost its capacity to sue.

Pursuant to 13-A M.R.S.A. §202(1)(B), a corporation has the power to ". . . sue and be sued in its corporate name, and to participate in any judicial, administrative, arbitrative or other proceeding." A domestic corporation must file an annual report. If it fails to do so the Maine Secretary of State shall ". . . suspend a domestic corporation from doing business." 13-A M.R.S.A. §1302(1). The suspension is ". . . merely a temporary restriction of its right to conduct business in its corporate name." *Forbes v. Wells Beach Casino., Inc.*, 409 A.2d 646, 654 (Me. 1979). Also see *Zimpritch, Maine Corporation Law & Practice*, §13.2. What happens to the plaintiff's complaint given its suspension as a corporation?

A review of *Community Electric Service of Los Angeles, Inc. v. National Electrical Contractors Association, Inc.*, 869 F.2d 1235, 1239 (9th Cir.1989), *cert. denied*, 493 U.S. 891 (1991) and *PLM v. Randle Co.*, 797 F.2d 204, 205-6 (5th Cir.1986) makes clear, as does the Maine statute, that the plaintiff cannot maintain its suit. The remedy is not to enter judgment against the plaintiff on its complaint because of its suspension but rather to dismiss the plaintiff's complaint without prejudice to its refiling if the corporation is reinstated within the statute of limitations.

The corporation has been suspended since August of 2001 and has had ample time to be reinstated. Therefore, it is not appropriate to stay the dismissal of this complaint which might be an appropriate remedy for a brief suspension of a corporation.

The defendants raised other arguments in their summary judgment motion which, if reached, could have reduced but not eliminated the plaintiff's claim. Should the plaintiff, after being reinstated, file a new complaint it should very carefully examine those additional arguments of the defendants given their substantive merit.

2

The plaintiff has also filed its own motion for summary judgment while the defendants have not yet proceeded on their counterclaims. The defendants shall inform the Clerk by January 24, 2003 whether they wish to proceed with their counterclaims by motion or trial or whether they wish to have them dismissed without prejudice.

The entry is:

> Plaintiff's motion for summary judgment is dismissed. Defendants' motion for summary judgment is granted in part. The complaint is dismissed without prejudice. Defendants to inform the Clerk of the status of the counterclaims by January 24, 2003.

Dated:      January 3, 2003

_____
Paul A. Fritzsche
Justice, Superior Court

PLAINTIFF:
Ronald Coles, Esq.
COLES & THOMPSON
PO BOX 1028
KENNEBUNK ME   04043-1028

DEFENDANTS:
Frederick C. Moore, Esq.
ROBINSON KRIGER & MCCALLUM
PO BOX 568
PORTLAND ME 04112-0568

Louis B. Butterfield, Esq.
OLADSEN & BUTTERFIELD
PO Box 130
PORTLAND ME   04112

PRO HAC VICE
George W. Wright, Esq.
CONTINENTAL PLAZA
401 HACKENSACK AVE
HACKENSACK NJ   07610

3