STATE OF MAINE                          SUPERIOR COURT
HANCOCK, SS.                            CIVIL ACTION
                                        Docket No. CV-99-35

Margaret Austin,
        Plaintiff/Counterclaim Defendant


        v.


Robert Stockwell et al.,
        Defendants/Counterclaim Plaintiffs/        Decision and Judgment
        Third-Party Plaintiffs

DONALD L. GARBRECHT
LAW LIBRARY

SEP 17 20__

        v.


Joseph DeBeck,
        Third-Party Defendant


        Hearing on all claims was held on August 26 and 27, 2002. On both hearing
dates, all parties were present with counsel.

        This case represents an amalgamation of claims brought among parties who were
involved in related business enterprises consisting of two restaurants and a convenience
store, all located in Trenton. Margaret Austin initiated this action when she brought suit
on a promissory note that had been executed in her favor when she loaned money to or
for the benefit of the businesses. The business, incorporated as defendant Beckwell
Management Co., Inc. ("Beckwell") and its principal, defendant Robert Stockwell, filed a
counterclaim against Austin, alleging that she participated in the conversion of corporate
funds and that she is liable for the debts owed by her son, third-party defendant Joseph
DeBeck, to the business and others. Even though these claims arise out of a common
background, they rest on distinct factual and legal predicates, and therefore they must be
considered separately.

1

## A. Austin v. Stockwell and Beckwell

The record establishes that prior to November 1998, Austin made a payment of $50,000 in order to extinguish that much of an outstanding bank loan previously taken out by Beckwell. At the time, DeBeck managed the restaurant owned by Beckwell, and there was some expectation that DeBeck ultimately might come to purchase the business from Stockwell and his daughter, Elizabeth Pal, who were the shareholders of Beckwell. Here, the defendants do not contest Austin's allegation that she is owed $50,000 (although the defendants claim that they are not liable for that amount because, they argue, her liability to them exceeds that amount).

Austin also alleges that she is owed additional amounts of $5,000 that she paid to the business to cover payroll and $2,000 she paid to satisfy an interest payment due to the bank. On November 3, 1998, Austin, DeBeck, Stockwell and Pal held a meeting that had the intended objective of allowing the parties to arrive at terms for the sale of the business to DeBeck. That did not happen in the end. Nonetheless, during the meeting, Stockwell signed a memorandum in which he promised to pay Austin the sum of $57,000 within 60 days. *See* plaintiff's exhibit 1. The defendants argue here that Stockwell executed that instrument only because Austin promised to provide him with verification that she had paid the additional $7,000 as she claimed. On this basis, the defendants argue that Austin committed fraud in the inducement. *See Forbes v. Wells Beach Casino, Inc.*, 409 A.2d 646, 655-56 (Me. 1979). The court first finds that Austin did not make such a promise. When Austin agreed to pay debts that DeBeck had incurred, she premised that liability on the completion of a "full accounting" that would verify the existence and amount of any such obligation. *See* plaintiff's exhibit 2. In contrast, as expressed in the writing (plaintiff's exhibit 1), Stockwell's commitment to repay Austin was unconditional. The court finds the omission of any such condition precedent to be dispositive, in light of Austin's inclusion of that provision in a separate writing created at the same meeting. Further even if she did make such a promise, the court cannot find by clear and convincing evidence that any such promise by Austin was fraudulent because there is no evidence that she fraudulently misstated her intentions at the time she made any such promise. *See id.* at 656. Her subsequent failure to provide verification is not persuasive evidence here that she did not intend to do so.

Further, the evidence is sufficient to show that Austin in fact made those payments totaling $7,000. First, the court accepts her testimony that she made them. Further, as is noted above, at the November 3 meeting, Austin agreed to pay DeBeck's debts, but only if a "full accounting" were conducted to substantiate any such obligations. In contrast, Stockwell did not expressly condition his liability to Austin in that way. Finally, Pal drew up a detailed schedule of reciprocal credits and obligations. Although she separated the $50,000 payment made by Austin from the additional $7,000 Austin claimed, in arriving the amount of consideration she sought for the transfer of the business to DeBeck, Pal was willing to accept Austin's claim for $7,000. As Pal testified at trial, she was willing to believe that Austin was due that sum. Under all of these circumstances, the court finds that Austin has proven her claim of $57,000.

However, Austin has not established that the parties agreed to the accrual of interest on the principal amount of $57,000. Under the present circumstances, the writing signed by the parties is the best evidence of the terms of their agreement. Austin's testimony that she does not know why the note omitted any reference to interest is best explained by the absence of any agreement to such a term.

## B. Stockwell and Beckwell v. DeBeck

Stockwell and Beckwell allege that DeBeck is liable to them in the amounts identified in the "Joe to Us" column of plaintiff's exhibit 3 and for additional amounts that they claim he wrongfully took and converted from the business.

In 1996, DeBeck expressly acknowledged in writing that he was liable to Stockwell in the amount of $20,352. *See* plaintiff's exhibit 4. As of November 1998, the defendants credited DeBeck with payments in the total amount of $3,000. (Pal testified that one payment of $200 was through a check drawn on the business' bank account. Nonetheless, the defendants do not appear to argue that credit for this payment should be withdrawn, and the evidence is not sufficient to establish that DeBeck failed to reimburse the business for that payment that he made for his own benefit.) Therefore, the principal balance on DeBeck's debt to Stockwell is $17,352.

The defendants also seek to have DeBeck liable for 8% annual interest indicated in the 1996 acknowledgement of debt. While the written agreement includes DeBeck's recognition that he owes money to Stockwell, the remaining terms of that agreement were

3

in anticipation that DeBeck and Stockwell would form a new business entity. As part of the financial framework worked out by the two, DeBeck would receive an equity interest and would pay any dividend distributions toward the debt he owed to Stockwell. It is in this context that DeBeck also agreed to pay interest on the uncontested debt at a specified rate. Because the future obligations that DeBeck assumed in the 1996 agreement (including interest payments) were part of an anticipated transaction that did not occur, the court cannot find that the contractual provision for 8% annual interest is enforceable here.

The 1998 statement of liabilities next identifies DeBeck's arrearages for rent. The rental arrearages have two components, both addressed in plaintiff's exhibit 13. First, between 1994 and April 1996, DeBeck leased a residence and the premises of one of the two restaurants. These premises were (and continue to be) owned by Pal. *See* plaintiff's exhibit 19. During that period of time, DeBeck operated both restaurant businesses. In April 1996, DeBeck terminated the lease by agreement, and he continued to rent only the residential premises. At that time, Stockwell assumed management responsibilities for the restaurant, and DeBeck became an employee. During both of those periods of time, however, Pal was the lessor. Neither Stockwell nor Beckwell was a party to the lease agreement. While the record evidence establishes that DeBeck is liable for rent arrearages, the evidence also establishes that those arrearages are owed to Pal. Pal herself is not a party to this action, and neither of the defendants at bar is entitled to recover from DeBeck for the liability owing to her.

Next, the defendants allege that DeBeck is liable to them for "incremental funding" in the total amount of $23,500. To the extent that they are explained in the record, the payments made by Stockwell were for purposes of supporting the business that, at the time he made the payments in 1997 and 1998, he operated. DeBeck was merely the manager and an employee of Beckwell during that period of time. The court therefore does not view these business-related advances in 1997 and 1998 as ones for which DeBeck is liable. Rather, as Stockwell himself stated during his deposition, they appear to be infusions of money into Stockwell's own business. (In contrast, Stockwell also testified that some of the money he loaned to DeBeck prior to 1997, and which forms part of the basis for the debt that DeBeck acknowledged in plaintiff's exhibit 4,

was business-related. However, during those earlier years, DeBeck operated and managed both restaurants. Therefore, DeBeck was the immediate and intended beneficiary of those payments, unlike the payments that Stockwell made in 1997 and 1998. And, in any event, as is noted above, DeBeck has assumed personal responsibility to repay Stockwell those amounts.)

Finally, the defendants allege that DeBeck engaged in a course and pattern of misconduct by converting money owned by Beckwell and using that money for his own purposes. The record certainly justifies the suspicions that Pal expressed during her trial testimony. For example, DeBeck wrote checks on the restaurant account and made them payable to himself with a notation of "personal." There also is evidence that DeBeck directly paid personal expenses with checks drawn on the restaurant account.

Nonetheless, despite well-founded suspicions, the court is unable to conclude that the defendants have established such financial misconduct by a preponderance of the evidence. DeBeck has articulated an explanation that he reimbursed the business account for its money that he used for non-business purposes. Although the court does not find DeBeck to be a particularly credible witness, the record evidence does not provide a comprehensive view of the business' financial transactions that would be necessary to determine the net effect of DeBeck's financial dealings; rather, the record is limited to evidence of isolated transactions. Further, knowing that the business' accountant monitored the financial transactions involving the business' bank account, DeBeck openly identified the purpose of at least some of these payments by means of notations written on the checks and the accompanying register. *See, e.g.,* defendants' exhibit 2. This makes it less likely (although certainly not impossible) that DeBeck was stealing from the company.

This evidence also must be seen in light of the more significant fact that an accountant and a large accounting firm both conducted forensic audits of the business' financial activities during the time when DeBeck is alleged to have misappropriated its money. Both investigations were inconclusive. There is no evidence that those investigations did not account for significant information that was made available to the court. Pal testified that the accountants' audits were inhibited by an inability to obtain information from the restaurant's own accountant and from other sources, such as the

drawee bank. The record, however, is devoid of evidence indicating what efforts had been taken to obtain that type of information. Rather, Pal assumed that the firms she retained had made an effort to gather those data. While that assumption may be correct, it remains an assumption, and it is not sufficient to demonstrate that the court is in a materially better position to evaluate claims of wrongdoing by DeBeck than were those accountants. For these reasons, the court cannot find that the defendants have proven that DeBeck engaged in actionable conduct.

As an alternative, the defendants seek an order that would allow further investigation, such as an accounting, into their claims. Neither that nor any similar form of relief was pleaded, and under that circumstance the court declines to continue this proceeding for that purpose.

### C. Stockwell and Beckwell v. Austin

The defendants' counterclaim against Austin rests on two grounds. First, they allege that she is liable for wrongfully taking and converting money belonging to the restaurant. They have simply failed to prove this claim. When asked to explain the factual basis for this part of the counterclaim, Pal quite candidly acknowledged – both directly and indirectly -- that it rested on speculation and on her suspicions arising from a transaction that involved a snowmobile, having no direct connection to the issues at bar. Stockwell was also unable to identify any meaningful evidence of misfeasance by Austin. The record evidence falls far short of demonstrating that Austin engaged in the wrongful conduct alleged by the defendants.

Second, the defendants allege that Austin is liable to Stockwell for any debts owed by DeBeck, based on a writing she signed at the November 3, 1998, meeting. *See* plaintiff's exhibit 2. The court finds, however, that she assumed DeBeck's debts (or some of them) on the express condition that his debts be established through a "full accounting." As is discussed above, prior to the November 8 meeting Pal had prepared a schedule of the debts that she claimed remained due from DeBeck. That schedule was intended to be used in calculating the price DeBeck would pay in order to acquire a full ownership interest in the restaurant business. During the course of the meeting, the objective shifted from DeBeck's acquisition of the business, to his extrication from that business. To help him do that, Austin (DeBeck's mother) agreed to pay his debts. The

6

parties had not been prepared to establish proof of all of the liabilities listed in plaintiff's exhibit 4, because there was no reason to anticipate that need. Therefore, although Austin stood ready to cover DeBeck's debts, she agreed to do so only after those liabilities had been proven though an accounting. Stockwell testified at his deposition that he understood that she wanted a confirmation of the amount of DeBeck's debt through an accounting before she was willing to assume liability for that debt. Indeed, Austin executed the written memorialization of her agreement to bear responsibility for DeBeck's debts, at or near the end of the meeting when that issue came up; during the earlier part of the meeting, DeBeck was not expected to pay off his debt directly. A "full accounting" had not been performed prior to the trial, and Austin's liability under plaintiff's exhibit 2 had not been triggered.

The defendants go on to argue that the trial in this case constituted the "full accounting." The court disagrees. Although this court trial provided the parties with an opportunity to produce financial data, it was not equivalent to the detailed auditing process that defines a financial accounting. Further, the methodology of an accounting may be quite different from the trial process, because the former is not subject to the restrictions and limitations that are created by the rules of evidence and procedural requirements that may not apply to the work of accountants and auditors.

Therefore, the court concludes that Austin's agreement to satisfy any outstanding obligations incurred by DeBeck has not yet exposed her to liability.

The entry shall be:

For the foregoing reasons, on the complaint, judgment is entered for the plaintiff, Margaret Austin, and against the defendants, Robert Stockwell and Beckwell Management Co., Inc., jointly and severally in the amount of $57,000, plus interest at the statutory rate. The plaintiff is awarded her costs of court.

On the third-party complaint of third-party plaintiff Robert Stockwell, judgment is entered against the third-party defendant, Joseph DeBeck, in the amount of $17,352, plus interest at the statutory rate. Third-party plaintiff Stockwell is awarded his costs of court against third-party defendant DeBeck.

On the third-party complaint of third-party plaintiff Beckwell Management Co., Inc., judgment is entered for third-party defendant, Joseph DeBeck.

7

On the counterclaim, judgment is entered for the counterclaim defendant, Margaret Austin.


Dated: August 30, 2002

_____
Justice, Maine Superior Court

FILED &
ENTERED

SEP 0 4 2002

SUPERIOR COURT
HANCOCK COUNTY